A. JACKSON McVEY

*v.*

GEORGE McQUALITY *et al.*

*Filed at Springfield November 26, 1880.*

1. ADMISSION—*by pleadings.* Where a defendant to a bill in chancery in his answer claims that the bond mentioned in the bill as the foundation of the relief sought, was forfeited by reason of non-payment, it in effect is an admission on the record of the existence of the bond.

2. EVIDENCE—*secondary, without objection.* Proof of the execution, contents and assignment of a bond for a deed may be made by parol testimony, if no objection is made to its introduction, but if it is objected to, the instrument itself must be produced, or the proper foundation laid for the admission of secondary evidence.

3. SAME——*proof of notice of equity in bill.* Where it is sought to defeat a clear legal title of record by one having a mere equitable title, on the ground that the equities of the latter were known to the former at the time of acquiring the legal estate, the allegation of notice must be established by clear

and satisfactory proof. The evidence should leave no reasonable doubt of the fact of notice.

4. ·Notice—*of ownership by possession.* The possession of land by a person at the time of his death is *prima facie* evidence of ownership at that time, and a subsequent purchaser of the legal title will be conclusively presumed to know that whatever rights such deceased person had in the land, not disposed of by will, and of an inheritable character, devolved on his heirs, and his possession being constructive notice of his rights at the time of his death, it becomes the duty of such purchaser to inquire of his heirs and ascertain the extent of their interest.

5. Fraud—*attempt to convey a larger estate in land than the grantor has—purchaser with notice.* Where a person holding a bond for a deed to land, part of the purchase money remaining unpaid, devised the same to his wife for her life, and she, after his death, paid the sum due and procured a conveyance to be made to her in fee, she will be not only the equitable owner for life, but will also acquire a lien on the whole premises for the heirs' ratable proportion of the money paid by her, and while the deed to her is fraudulent as to the heirs so far as the fee is concerned, yet it is not so with respect to her life estate. That, she may dispose of as she pleases, and it will not be fraudulent as to them, and her grantee, with notice, will take the legal title the same as it was held by her.

6. Homestead—*right to convey it as against heirs.* Prior to the homestead law of 1871-2, a widow had no right in the lands of her deceased husband which she could convey to any one. Her conveyance and surrender of the same to another was a complete abandonment of the homestead, and as against the heirs she could have no homestead which she could enforce.

7. Trust—*when holder of legal title held to be a trustee.* It is well settled that where a party purchases an estate from one having a mere legal title, knowing that in equity the estate belongs to another, his purchase as against the equitable owner will be deemed fraudulent and void, and he will be treated as a mere trustee of the equitable owner.

8. Same—*decree on enforcing conveyance from one wrongfully acquiring legal title.* Where a person holding a bond for a deed for land died, and his widow, upon the payment of the sum due on the land, procured the legal title to be made to her and then conveyed the same to the defendant, who had notice of the equitable title of the heirs of the deceased, the husband having devised her a life estate in a part of the land, it was *held,* on bill by the heirs against the defendant to have a trust declared and for a conveyance made to them, that the court by its decree should have ascertained the heirs' ratable proportion of the purchase money paid by the widow, and required them to pay the same into court for the widow or her grantee, and upon such payment should have compelled the defendant to convey the part not devised to the widow to the

heirs absolutely, and the remainder in fee as to the land so devised, and that in default of such conveyance by the defendant, the master in chancery should have been required to make the same.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. H. M. VANDEVEER, Judge, presiding.

Mr. N. M. BROADWELL, for the plaintiff in error.

Messrs. CREA & EWING, for the defendants in error.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a proceeding in chancery commenced by defendants in error against plaintiff in error and others, in the Christian county circuit court, on the 20th of October, 1868, for the recovery of certain real estate particularly described in the bill. The venue was subsequently, by consent of parties, changed to Sangamon county.

The bill in substance charges that one John Grigg, in the year 1850, being seized in fee simple of the north-west of the south-east and five acres on the west side of the south-west of the south-east of section 11, township 15 north, range 1 west of the 3d principal meridian, in Christian county, sold the same to John C. Sprouse for $135, Sprouse paying a part of the purchase money in hand and giving his notes in three equal installments for the residue. That Grigg at the same time executed to Sprouse a title bond by which he agreed to convey to him the land upon the payment of the balance of the purchase money. That subsequently Sprouse sold the lands and assigned the bond to one White, and that White afterwards transferred the same to Bingham, who, in March, 1862, sold the land and assigned the bond to William McQuality, ancestor of complainants, who thereupon took possession of the lands and resided thereon till the time of his death, which occurred on the 30th of August, 1862. That at the time of his death he left him surviving complainants, his heirs, and Elizabeth McQuality, his widow. That in 1863 the widow, Elizabeth McQuality, paid Grigg the balance due on the land,

being about $400, and thereupon procured a deed from Grigg conveying the lands to John G. Sprouse, who without consideration conveyed the lands by quitclaim deed to Elizabeth McQuality. That she in the same year, in consideration of $1000, which was much less than their value, conveyed the lands by quitclaim deed to Jackson McVey. That said lands at the time of their conveyance to McVey were worth $5000, and that he has been in possession of the lands ever since. That McVey, both before and at the time of his purchase, knew that William McQuality at the time of his death was the owner of the equitable title to, and was in possession of said lands, residing thereon, and that the deeds to Sprouse, Elizabeth McQuality and McVey were in fraud of the rights of complainants. That complainants have requested McVey to convey the lands to them, offering to refund such sum of money as was paid to Grigg on account of the purchase money. The bill prays that an account be taken of the rents and profits of the land while in the possession of McVey, and also of what may be due from complainants on account of the purchase money paid to Grigg. McVey, by his answer, denies all knowledge either before or at the time of his purchase of the equities of complainants, but admits that he knew William McQuality, before and at the time of his death, was living on the lands in question. The answer further alleges that William McQuality died testate, and that by his will he gave to Elizabeth McQuality, his widow, a life estate in the lands in question, and also that she had an estate of homestead and dower in the lands which she had a right to convey, and that those interests of hers in the land passed by her deed to McVey. McVey also filed a cross-bill setting up substantially the same facts alleged in his answer, and also the insolvency of Elizabeth McQuality. The latter being a defendant in the cross-bill, made no answer thereto, and a decree *pro confesso* was taken against her. There was a general denial of the cross-bill on the part of the McQuality heirs.

On the 8th of November, 1875, a final decree was entered in the cause substantially as prayed for in the original bill, and thereupon the cause was brought to this court by writ of error and the rendition of that decree is assigned for error.

A reversal of the decree of the circuit court is asked on these grounds: First, it is claimed that the making of the title bond by Grigg to Sprouse, and the subsequent assignments thereof, as charged in the bill, have not been sufficiently proved. We are unable to concur in this conclusion. In view of the whole of the testimony, there can scarcely be a reasonable doubt on this question. Sprouse, in speaking of the bond in question, swears: "I purchased the land from John Grigg. * * * I had a bond for the deed, which I assigned to Elizur White about five or six years after it was executed, and gave possession of the land to White, for which he paid me $40.00." Moreover, McVey, in his answer, claims that the bond mentioned in the bill was forfeited by reason of non-payment, which is in effect an admission on the record of the existence of the bond.

Bingham satisfactorily shows, by his testimony, both the existence of the bond and the assignment of it by him to William McQuality.

The objection, as argued, looks rather to the admissibility of the testimony than to its probative force. It is urged that the bond itself should have been offered to establish both its existence and the assignment. That the bond itself would have been the best evidence for both these purposes is conceded, but it does not follow that in the absence of any objection to the admissibility of the testimony, these facts could not be sufficiently established by parol testimony. The evidence was secondary, and if it had been objected to on that ground it would doubtless have been excluded, unless the proper foundation for its admission had first been laid.

But the testimony of the witnesses showing the execution of the bond and the assignments thereon was not objected to

7—97 Ill.

on the ground that it was secondary evidence. If that had been done, quite a different question would be presented.

In the next place, it is earnestly insisted that the evidence does not satisfactorily show that at the time of the conveyance to McVey he had any knowledge of the equities of the McQuality heirs. Or, in other words, it is claimed that he is a purchaser for a valuable consideration, without notice of complainants' rights, and, as such, is entitled to the protection of a court of equity.

The allegation of notice in the bill is a material one, and the *onus probandi* rests upon complainants. There is no ground for diversity of opinion as to the measure of proof which the law requires upon this question. It is well established by an unbroken current of authority that where it is sought to defeat a clear legal title of record by one having a mere equitable title, on the ground that the equities of the latter were known to the former at the time of acquiring the legal estate, the allegation of notice must be established by clear and satisfactory proof. The evidence should leave no reasonable doubt of the fact of notice. It is the settled policy of the law to give security to, and confidence in, titles to the landed estates of the country which appear of record to be good.

On the other hand, it is equally well settled that where a party purchases an estate from one having a mere legal title, knowing that in equity it belongs to another, his purchase, as against the equitable owner, will be deemed fraudulent and void, and he will be treated as a mere trustee of the equitable owner.

The real question then is, have the defendants in error established the allegation of notice in conformity with this rule, fixing the measure of proof as just stated?

We shall not review or discuss the testimony on this question. To do so would lead to great prolixity, without probably any compensating benefit. The court below, by its decree, has found that McVey purchased with notice of the rights

of the McQuality heirs, and we are unable, after a very careful consideration of all the evidence, to say that the conclusion reached by that court is wrong.

The answer of McVey himself admits that he knew that at the time of his death McQuality, together with his family, was residing on the land, and his possession was *prima facie* evidence of ownership at that time, and McVey is conclusively presumed to know that whatever rights McQuality had in the land not disposed of by will, and of an inheritable character, devolved on his heirs, and his possession being constructive notice of his rights at the time of his death, it was the duty of McVey to have inquired of the heirs and ascertained the extent of their interests.

Finally, it is claimed that the decree must, at all events, be reversed, on the ground, as is alleged, that whatever may be the rights of the parties with respect to the fee in these lands, Elizabeth McQuality was certainly entitled, under the will of her husband, to a life estate in them, which passed to McVey by her deed, and should have been secured to him in some manner by the decree; but, on the contrary, the decree deprives him of all rights whatever in the premises.

This claim is well founded as to the forty acre tract of the land, but not as to the five acres off the adjoining forty. Under the will of her husband, Elizabeth McQuality clearly had an equitable life estate in the north-west south-east section 11, township 15 north, range 1 west of the 3d principal meridian, subject to her ratable proportion of the unpaid purchase money. Upon paying the whole of the purchase money she was not only the equitable owner of the forty acre tract, but she also thereby acquired a lien on the whole of the premises for the heirs' ratable proportion of the purchase money paid by her. While, therefore, the deed from Grigg to Sprouse at her instance was fraudulent as to the heirs, so far as the fee was concerned, yet it was not so with respect to her life estate. That, she had a right to dispose of as she pleased, and as the heirs had no interest in it, no disposition she might

make of it could with propriety be regarded fraudulent as to them.

Upon the conveyance to Sprouse he became clothed with the legal title to all the land in controversy, which he held in trust for the equitable owners, according to their respective interests. By Elizabeth McQuality's conveyance to McVey he became in like manner vested with the legal title to the whole of the premises. By Sprouse's deed to Elizabeth McQuality her equitable life estate became merged in the legal estate, which passed to her in her own right by that deed, and the same was conveyed by her to McVey; so that McVey, by virtue of her deed, became seized of a freehold estate in his own right, during her life, in the forty acre tract, and also of the fee simple legal estate, subject to such life estate, in the whole of the premises in controversy, in trust for the heirs.

As to the five acres off the adjoining forty acre tract, McVey acquired no equitable interest in that by virtue of Elizabeth McQuality's deed to him, unless by such conveyance he became subrogated to her right of a lien in equity on the premises for the heirs' ratable proportion of the purchase money paid by her, as first stated; but of this we express no opinion. She had no rights, as is supposed, in the five acre tract under the homestead law, as it then existed, that she could transfer to any one. Her conveyance and surrender of the premises to McVey were a complete abandonment of the homestead. But outside of this, she had no homestead rights, as the law then stood, which she could enforce as against the heirs. The circuit court, therefore, should, by its decree, have ascertained the heirs' ratable proportion of the purchase money paid by Elizabeth McQuality, and required them to pay the same into court for her or McVey, as their rights might appear, and upon such payment should have compelled McVey to convey to the complainant the five acre tract absolutely, and the remainder in fee in the forty acre tract, and, in default of such conveyances by McVey,

the master in chancery should have been required to make the same.

For the reasons indicated, the decree of the court below is reversed, and the cause remanded, with directions to that court to enter a decree in conformity with the views here expressed.

*Decree reversed.*