(No. 12272.—Judgment affirmed.)

MARTIN MOUSTGAARD, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HERMAN ERICKSON, Defendant in Error.)

*Opinion filed February 20, 1919.*

1. WORKMEN'S COMPENSATION—*a claim for compensation need not be in writing.* The making of a claim for compensation within six months after the accident is essential to the right to an award under the Workmen's Compensation act, but the claim may be verbal and is sufficient if the employer is informed by it that the employee intends to claim the benefit of the act.

2. SAME—*when employee's testimony as to making claim is not incompetent as a conclusion.* Testimony by an employee that he went to his employer's house and asked for his compensation because he needed it is not incompetent as a mere conclusion, nor is its effect destroyed because he testified, in answer to the question what he said, that he told his employer he wanted to know what insurance company to go to to get his money.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

THOMPSON, TYRRELL & CHAMBERS, for plaintiff in error.

VINCENT D. WYMAN, HARRY C. KINNE, and CHARLES E. CARPENTER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Industrial Commission made an award under the Workmen's Compensation act in favor of Herman Erickson against Martin Moustgaard for a period of 133 weeks of temporary total incapacity for work on the part of

Erickson and also for the loss of his leg. The circuit court of Cook county having confirmed the award, certified that the cause was one proper to be reviewed by the Supreme Court, and a writ of error has been sued out to review the judgment.

Two objections are made to the award: First, that claim for compensation was not made within six months after the accident; and second, that there is no evidence of 133 weeks of temporary total incapacity to work.

The accident happened on a Wednesday in April, 1914, while Erickson, who was working for the plaintiff in error in the construction of a foundation, was wheeling concrete over a runway in a wheelbarrow. A cross-piece under the runway broke, Erickson let go with his right hand, the wheelbarrow tipped and the handle struck the inside of his right knee. He continued to work that day and the rest of the week, though his knee was swollen and painful, but the next Monday he did not go to work. On that day, which was April 20, he called upon Dr. Paulson, who treated him occasionally from that time until August, 1915, the injury getting worse, when he told Erickson it was a bone injury and he must go to the hospital. Erickson was in the Cook county hospital from March, 1916, to October, 1916, and his leg was amputated in May. Subsequent amputations were made in July and September and he was discharged on October 22, 1916.

The making of a claim for compensation within six months after the accident is essential to the right to an award of compensation under the Workmen's Compensation act. (*Bushnell* v. *Industrial Board,* 276 Ill. 262; *Haiselden* v. *Industrial Board,* 275 id. 114.) The claim need not be in writing but may be verbal, (*Suburban Ice Co.* v. *Industrial Board,* 274 id. 630,) and is sufficient if the employer is informed by it that the employee intends to claim the benefit of the act. (*Conway Co.* v. *Industrial Board,* 282 Ill. 313.) Erickson testified that the plaintiff in error

was present when the accident happened, and that the next Monday Erickson went to the job and told the plaintiff in error his leg was so sore that he had to go home, and the plaintiff in error said: "You wasn't hurt on the job; you were drunk and fell over and hurt yourself." Three or four days later he telephoned to Moustgaard that his knee was acting pretty bad and Moustgaard had better report him sick to the insurance company. Two weeks later he said he went to Moustgaard's house and asked for his compensation because he needed it,—he had nothing to live on. Moustgaard was just ready to drive away, and Erickson told him he wanted to know what insurance company he had to go to and get money, because he needed it. Moustgaard told him he did not report to the insurance company and drove off. The plaintiff in error argues that Erickson's statement that he asked for his compensation because he needed it,—he had nothing to live on,—was a mere conclusion, and that it appears that the statement does not correctly represent what he said, from his immediately stating, on being asked what he said: "I told him I want to know what insurance company I got to go to and get money, because I need it." This objection assumes that the answer in which the language quoted was used was intended as a substitute for the answer to a previous question instead of an expansion of it, as the witness probably intended. Even apparently simple statements of fact upon analysis will frequently be found to be based upon inferences drawn from other facts which are assumed. The ownership of property, marriage, relationship, and many other conditions, are conclusions dependent upon the existence of facts out of which they arise, and yet they are usually proved by a direct statement of the ultimate conclusion. Such a statement may sometimes be incompetent if objected to, but if received without objection it cannot be disregarded as of no probative force. Whether Erickson asked for compensation depends upon the language he

used, but this does not make his statement of the ultimate fact incompetent evidence. It is not destroyed by the statement that he asked about the insurance company, which he probably supposed would have the compensation to pay.

It is contended that there is no evidence of a temporary total incapacity for 133 weeks. The accident occurred April 15, 1914, and the decision of the arbitrator was rendered February 2, 1917, more than two years and nine months later. Erickson testified that he tried to work several times but was unable to. From the time he visited Dr. Paulson his knee was sore and swollen. Though it improved temporarily the pain continued. He could not walk right. Eventually it got much worse and the amputations which have been mentioned became necessary. Dr. Robertson, a physician at the hospital, testified that he thought Erickson could do light work in three or four months after his discharge. There was evidence of total incapacity to work for the time for which compensation was awarded.

*Judgment affirmed.*