General Motors Acceptance Corporation, Plaintiff-Appellee, v. Jesse J. Elder, Defendant-Appellant.

Gen. No. 10,246.

Third District.

January 18, 1960.

Released for publication February 5, 1960.

Garman and Owen, of Decatur, for defendant-appellant.

Vail, Mills, and Armstrong, of Decatur, for plaintiff-appellee.

PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This is a replevin suit by the plaintiff, General Motors Acceptance Corporation, against Jesse J. Elder, to recover possession of an Oldsmobile 1957 Holiday Sedan, Model 88. The car was purchased on April 15, 1957, in Paducah, Kentucky, by a man calling himself Joseph T. Gaw. The dealer was C. N. Baker & Son, of Paducah. Gaw gave an address in Chicago, Illinois, as his home address, this address later turning out to be a vacant lot. He told the dealer he was a buyer of scrap metal, basing his operations out of Chicago, and that he needed the car for his business. He used only a General Delivery address for Paducah. He gave references to the dealer, which were checked, and the dealer contacted the Paducah representative

of the plaintiff corporation to ascertain if, upon the sale of the car, the plaintiff corporation would purchase the conditional sales contract. The purchase price of the automobile was $4,378.15, and after allowing for down payment, discount, insurance and items connected with the sale, the principal balance to be paid by the said Gaw was the sum of $3,299.85, plus finance charges, to be paid as follows: $300.00 in 90 days and $100.51 each month for 36 months on the 15th of the month. The plaintiff corporation did purchase the conditional sales contract and the same was assigned to the plaintiff corporation. Under Kentucky law it is necessary that the person registering the automobile must have a bill of sale, and this was given to Gaw by the dealer. Also, as required by Kentucky law, the conditional sales contract was acknowledged by Gaw before a notary and recorded in the office of the Clerk of the County Court of McCracken County, Kentucky, on April 17, 1957.

Gaw had represented to the dealer that he would use the car both in Illinois and Kentucky. A few days later, Gaw applied for and obtained an Iowa certificate of title for the automobile, which showed no liens of any kind. He then took the automobile and the Iowa certificate of title to Decatur, Illinois, and offered it for sale at the Hugh James Auto Auction. The defendant was an auctioneer and also the president of the Hugh James Auto Auction. About noon on April 29, 1957, Gaw took the automobile to the auction. Defendant examined the Iowa title, which showed that the car had had Kentucky license plates and that the previous evidence of title was Kentucky registration No. 644,797. Defendant also asked Illinois state license inspectors, present at the auction to examine the title. Gaw told the defendant that there were no liens on the car and that the car came from Kentucky. So far as the record shows, the defendant made no in-

vestigation of the Iowa title certificate and made no inquiries as to the Kentucky registration and license plates. Defendant paid Gaw $2,700.00 for the automobile about 3:30 p. m. on the same day, and Gaw assigned the title but the name of the assignee, Jones Imp. Co. was not inserted until the next day, April 30, 1957. Later, the Iowa title was surrendered to the Illinois Automobile Title Department and an Illinois title was issued. In the meantime, Gaw made the payments due May 15, 1957, and the one due June 15, 1957, but made no further payments. When the July payment was not paid, the plaintiff corporation began to hunt Gaw or the automobile he had purchased, and found it in the possession of the defendant Elder, sometime in August. The representative of the plaintiff asked the defendant to turn over possession of the automobile but the defendant refused. Replevin was then instituted by the plaintiff corporation in the Circuit Court of Macon County. There was a jury trial and the jury returned a verdict for the plaintiff and judgment was entered on that verdict. The defendant appeals to this court.

Defendant contends (a) Plaintiff failed to prove by competent evidence any title or right to possession of the automobile; (b) Plaintiff is estopped from denying defendant's title and estopped from asserting any lien; (c) The court improperly instructed the jury and refused proper instructions offered by the defendant. In support of his contentions he cites some twenty-seven cases, some from other jurisdictions, but in the main, Illinois cases. Space will not permit any discussion of each, but the main points urged will be considered. Under "Points and Authorities," it is stated that the plaintiff in a replevin suit must recover on the strength of his own title and not on the weakness of the title of the defendant, and this is not questioned or disputed. The next three points

59

may be grouped into one, namely that the plaintiff did not prove by competent evidence his title or right of possession, citing Feulner v. Gillam, 216 Ill. App. 85 and Perkins v. Knisely, 102 Ill. App. 562, claiming that the evidence on this question was a conclusion on the part of witnesses Burch and Etheridge. Burch was bookkeeper for the dealer in Paducah, Kentucky, and Etheridge was the branch manager of the plaintiff's branch office at Paducah, Kentucky. The Feulner v. Gillam case is authority for the rule that a witness may not give an expression of opinion from other facts in evidence, but it also is authority that a witness may testify that a certain person or corporation is the owner of a piece of commercial paper where it appears in evidence that such fact is within the knowledge of the witness. The Perkins v. Knisely case states only that questions calling for the conclusion of a witness rather than facts, are improper. The case of Barrett v. Hinckley, 124 Ill. 32, was a case dealing with the title to real estate and the law there laid down is not applicable to the facts here. The case of McVey v. McQuality, 97 Ill. 93 was also a land title case, and there the court laid down the rule that parol testimony of the execution, contents and assignment of a bond for deed may be made by parol testimony, if no objection is made to its introduction, but if objected to, the instrument itself must be produced, or the proper foundation laid for the admission of secondary evidence. The case of Osborn v. People ex rel. Lewis, 103 Ill. 224 was a land title case, and the court in that case dealt mainly with the importance of written evidence of title. The case of Young v. Ebersohl, 328 Ill. 273, also is concerned with land titles and is authority that opinions of witnesses cannot be used to make proof of title to real estate.

In this case, the original conditional sale agreement was not used in evidence, but a photostat of the origi-

nal was used and identified by the bookkeeper, Burch. The defendant objected once or twice, to the questions propounded to this witness as calling for a conclusion, but the evidence fails to show any objection to the evidence as secondary evidence. The branch manager, Etheridge, identified the photostat of the original conditional sale contract and testified that his company was the owner of it. This was done without any objection on the part of the defendant as to it being secondary evidence. In the McVey v. McQuality case, heretofore cited, at page 97, the court says: "That the bond itself would have been the best evidence for both these purposes is conceded, but it does not follow that in the absence of any objection to the admissibility of the testimony, these facts could not be sufficiently established by parol testimony. The evidence was secondary, and if it had been objected to on that ground it would doubtless have been excluded, unless the proper foundation for its admission had first been laid."

The case of Moustgaard v. Industrial Commission, 287 Ill. 156, in an analysis of what is conclusion on the part of the witness and what is fact, says: "Even apparently simple statements of fact upon analysis will frequently be found to be based upon inferences drawn from other facts which are assumed. The ownership of property, marriage, relationship, and many other conditions, are conclusions dependent upon the existence of facts out of which they arise, and yet they are usually proved by a direct statement of the ultimate conclusion. Such a statement may sometimes be incompetent if objected to, but if received without objection it cannot be disregarded as of no probative force."

■■ Here the witness Burch, bookkeeper for the auto company at Paducah, had knowledge of the sale and the assignment to the plaintiff corporation. The

61

witness Etheridge, branch manager of the plaintiff corporation at Paducah, had knowledge of the assignment of the conditional sales agreement from the auto dealer to the plaintiff and knowledge as to the ownership of the same by the plaintiff. Both these witnesses testified as to facts within their knowledge. In testifying that the plaintiff was the owner of the conditional sales agreement, they were not giving an expression of opinion from other facts in evidence, but they were testifying from facts within their own knowledge. Such evidence was held competent in the Feulner v. Gillam case. As to the contention that the best evidence was not offered, in the absence of objection to the secondary evidence offered, on the ground that it is secondary evidence, the defendant cannot raise the question after the opportunity to object had passed and the evidence has been received, but will be considered as waiving it.

■ The defendant concedes that as a general rule the vendor of property sold under a conditional sales contract valid in the state where made will be protected even as against innocent purchasers for value where the property is taken out of the state without the knowledge and consent of the conditional vendor, citing First Nat. Bank of Nevada v. Swegler, 336 Ill. App. 107, and Commercial Credit Corp. v. Fatz, 346 Ill. App. 541, but claims there is an exception to this rule unless the vendor takes steps to protect his interest in compliance with the laws of the state to which the property was removed. In support of this position the defendant cites Graver Bartlett Nash Co. v. Krans, 239 Ill. App. 522. This case does not support the theory of the defendant. That case cites a long line of cases of our Supreme and Appellate Courts prior to the enactment of the Uniform Sales Act of 1915. But the court continuing, held that after the enactment of the Uniform Sales Act, the rule in

■■■■■■■■■■■■■■■■■

Illinois was changed as to conditional sales contracts and that no title can be conveyed by the buyer of goods under a conditional sales contract, even though the buyer has possession of the goods and the purchaser from the buyer had no notice of the reservation. The case of First Nat. Bank of Nevada v. Swegler, 336 Ill. App. 107 was a chattel mortgage case, the bank taking a mortgage of one Martha Bell on an automobile. As in this case Mrs. Bell later obtained a certificate of title in another state, showing no liens against the automobile. Later Mrs. Bell, using an assumed name, sold the automobile to an automobile dealer in Chicago, an innocent purchaser for value, and the automobile dealer in Chicago sold it to Swegler, a bona fide purchaser for value, without notice of any mortgage liens. And the court in that case, citing National Bond & Investment Co. v. Larsh, 262 Ill. App. 363, said: "The rule holding that a mortgage valid in one State should be valid in any State, is founded upon the principle analogous to that of the rights of the owner of property stolen from him and taken, transported and sold in another State. He can follow the thief into the latter State and reclaim the stolen property wherever found, on the theory that the thief could give no title to the stolen property. The mortgagor having no legal title to the mortgaged property could not pass title to a purchaser for the same, and the one purchasing it from the second purchaser could not procure any better title than his vendor to the property. . . . No doubt in some cases, as in this case, this rule works a hardship upon an innocent purchaser, but it seems to us fairer and more equitable than a contrary rule."

■■ In considering this question, it must be remembered that conditional sales contracts are not required to be recorded in Illinois. The rule is different in Kentucky, where recording is required. The

63

■■■■■■■■■■■■■■■■■■■■■■■■

evidence on the part of the plaintiff shows that the conditional sales contract of Gaw to C. N. Baker & Son, of Paducah, Kentucky, was assigned to the plaintiff and recorded in the office of the proper clerk of McCracken County, Kentucky, two days after execution, so that the laws of Kentucky as to recording were complied with by the plaintiff. This takes it out of the rule as established by this court in the case of Harrison v. State Bank of Hull, 11 Ill.App.2d 471. In that case a conditional sales contract was executed in Missouri, which state requires the recording of conditional sales contracts. In that case the conditional sales contract was not recorded in Missouri and the court in holding that the seller's rights were inferior to that of subsequent purchasers in good faith, held that failure to record the contract in accordance with the laws of the state where the sale was made was fatal to the seller's remedy against a citizen of Illinois who was an innocent purchaser for value.

■■ The defendant contends that an instruction that recording of the conditional sales contract in the state where made is constructive notice to all the world, is erroneous, where the evidence shows that property sold under conditional sales contract was removed to another state with the knowledge of the seller. It must be conceded that the seller complied with the laws of Kentucky governing recording. Is such recording constructive notice to all the world? The Uniform Sales Act has been adopted by both Kentucky and Illinois. That Act recognizes the validity of conditional sales contracts. Am. Jur., Vol. 47, Section 847. It is likewise the rule in the two states that a vendee under a conditional sales contract can convey no title to the article sold where the title is reserved in the seller until full payment is made. In the absence of statutory provisions to the contrary, the reservation of title is valid even as against bona fide

purchasers or mortgagees for value and without notice of the want of title in the vendee, and the vendor may assert his title as against such persons. Am. Jur., Vol. 47, Section 851. Even if the vendee under a conditional sales contract attempts to transfer the property and title to it, the transferee acquires only the rights which the vendee had, for, as a general rule, the vendee cannot transfer any better title than he had, unless the vendor has consented to a sale by the vendee without conditions, or the vendor has failed properly to record the contract as required by statute. Am. Jur., Vol. 47, Section 927.

While the Illinois case cited on this question, namely Harrison v. State Bank of Hull, 11 Ill.App.2d 471, does not pass directly on this point, it does hold that failure to record as required by the laws of the State where the sale is made, is fatal to the rights of the conditional sales vendor where he attempts to assert his rights against subsequent purchasers in good faith. Conversely, if the law governing recording in Kentucky was complied with, it would seem that the title of the vendor would be good in Illinois against purchasers in good faith.

The defendant cites the case of Johnson v. Sauerman Bros., 49 S.W.2d 331 (Ky.), but a reading of that case fails to support his position. In that case the Kentucky court held that where consent is given to the removal of the chattel or it was the intention of both parties to the sale that the property would be removed into another state and have its operations there, the laws of that state would control, citing the case of Fry Brothers v. Theobold, 205 Ky. 146, 265 S. W. 498, 499.

The plaintiff cites on this point another Kentucky case, that of Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S.W.2d 1055. In that case the court held that the laws of Kentucky requiring recording of the conditional sales agreement is not affected by

65

the Uniform Sales Act and the Kentucky court cites the Illinois case of Sherer-Gillett Co. v. Long, 318 Ill. 432, in support of its finding.

Sections 361.200 and 361.230 of the Kentucky Statutes governing sales under the Uniform Sales Act are identical with Sections 20 and 23, respectively, of Chapter 121½, Illinois Revised Statutes. Section 20 of the Illinois Act provides for the reservation of title, and Section 23 provides that where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.

To summarize, the seller and its assignee, the plaintiff herein, did comply with the laws of Kentucky as to recording of the sales agreement. The title did not pass at any time to Gaw. Not having title, he could not pass title to any purchaser from him, unless he had permission so to do, or the seller was estopped from denying his authority to sell, neither of which exceptions appear here. The buyer gave his residence as Chicago, Illinois, so there was no question he would take the automobile to another state. The Kentucky court held that where the intention of the parties was that the automobile would be removed into another state and have its operations there, the laws of that state would govern, in this case, the laws of Illinois. The fact that Gaw registered the automobile in Iowa would not affect the matter since it is not contended that Gaw ever resided in Iowa and the presence of the automobile in Iowa was more in the nature of *in transitu*. Although the defendant here may be considered as an innocent purchaser for value, under our laws his rights are subordinate to that of the owner. Commercial Credit Corp. v. Fatz, 346 Ill. App. 541;

First Nat. Bank of Nevada v. Swegler, 336 Ill. App. 107; National Bond & Investment Co. v. Larsh, 262 Ill. App. 363. The conditional sales contract was valid and enforceable in Kentucky, therefore it is enforceable in Illinois.

In the light of the decisions of our courts on this matter, there is no error in the instruction complained of.

██ ██ The final point urged by the defendant is that the plaintiff is estopped from denying the title of Gaw. The doctrine of estoppel is often invoked but seldom effective. In this case, there is no evidence in the record that would support the doctrine of estoppel. The laws of Kentucky were complied with, insofar as the seller and its assignee were able to do so. The buyer paid monthly installments after he had sold the car and there is no evidence that the seller or the assignee had any notice that the car had been sold. But when one of the payments became due and was not paid, then the plaintiff took prompt action. If there was any lack of diligence it would appear to be on the part of the defendant. The evidence shows he was the operator of an automobile auction and familiar with the sale of automobiles and their title certificates. Yet he did very little, if anything, to check upon Gaw's title to the automobile, which he could have done without much effort. Since the title never passed, to Gaw, the defendant's title to the automobile was only as good as that of Gaw, which was no title at all until the full payment was made.

For the reasons above stated, the judgment of the Circuit Court of Macon County is affirmed.

Affirmed.

CARROLL and ROETH, JJ., concur.