McCANN CONSTRUCTION SPECIALTIES COMPANY, Plaintiff-Appellee, *v.* MARK BOSMAN *et al.*, Defendants-Appellants.

Second District (2nd Division)    No. 76-318

Opinion filed January 10, 1977.

Roger K. O'Reilly, of Wheaton, for appellants.

Paul T. Kalinich, of Kalinich, McClusky & Mehling, of Glen Ellyn, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal is from a temporary injunction enjoining defendants from soliciting business from most of the persons, firms or corporations whose names and addresses are set forth on plaintiff's customer list. Defendants contend that the trial court's judgment constituted error because of the insufficiency of the evidence adduced to support the relief granted.

Plaintiff filed a complaint on September 24, 1975, in the circuit court of Du Page County against the defendants seeking an injunction against use

of that list, an accounting of profits from sales to plaintiff's customers made by its use, and for actual and punitive damages. The complaint alleged that plaintiff and defendants are engaged in the sale of construction supplies; that about July 31, 1975, defendants "wrongfully" came into possession of its customer list containing 1600 names and addresses compiled by plaintiff over a period of several years, which "is confidential information * * * defendants had no right to take or use"; that although plaintiff demanded that defendants cease using it, defendants refused to do so; that by reason thereof plaintiff has and will continue to lose business and profits to defendants and has been and will be irreparably harmed.

On October 30 and November 5, 1975, an evidentiary hearing was held on plaintiff's motion for a temporary injunction. The testimony of Richard McCann, plaintiff's president, showed that plaintiff commenced business in April, 1967. It then had about "30, 40 customers." At the time of the hearing it had 1500 to 1600 customers. McCann had started the customer list about three years ago starting with the customers he then had and continued adding to it. The list consisted of three "cardex" files, each containing a complete list of names and addresses of customers. One of these files was kept on "the secretaries desk that maintained the file," another set "in the main shop" and another set "in the annex." The one in the shop was used by plaintiff's salesmen; the one in the annex was used "for collections." Some of the cards had telephone numbers, names of "principals," and credit information (such as current status of the account, whether COD or open account). McCann testified that plaintiff spends about $4800 annually advertising in telephone directories in the metropolitan area, and about $4000 in trade media; their last year's catalogue cost about $20,000. Plaintiff employs six salesmen who use radio-equipped company cars in "getting new customers."

McCann further testified that "around the first of August" 1975, the file (containing one of these lists) was discovered missing. The parties stipulated that the defendant corporation came into possession of plaintiff's customer list about the middle of August "through an outside source not the officers themselves." The "source" was disclosed by defendant Maddon as Robert Crittenden. Crittenden testified ("in rebuttal") that he was employed by defendant corporation "about the second week in July" 1975, as "manager of the warehouse"; for about three years prior thereto he was employed by plaintiff as mechanic and truck driver (not in sales work) until the termination of his employment with the plaintiff. Crittenden further testified that plaintiff's customer list "came" to him "in an envelope and it was a xerox copy of card index cards," and that he gave it to defendant Bosman "a couple of days" later, i.e., "about the second week of August."

When McCann was asked by his counsel to "indicate" the loss to plaintiff of "any specific orders to a customer" included in plaintiff's customer list, he identified only Ralph Olsen of Wooddale. Defendant Maddon (secretary-treasurer of defendant corporation) testified that Ralph Olsen was defendant corporation's customer since prior to the second week of August 1975, and that on July 11, 1975, defendant corporation had shipped an order in the sum of $317.18 to Olsen Construction Co. of Wooddale.

Maddon further testified that defendant corporation began doing business in the latter part of May, 1975; that plaintiff's customer list came into his company's possession about the first or second week of August in the form of xerox sheets, which have since been destroyed, and that the list was supplied by plaintiff's former employee, Crittenden, who also supplied defendants with memorized names of customers with whom he had done business during his former employment by plaintiff. Plaintiff's customer list was used in conjunction with several other lists from six different companies to compile a mailing list. Maddon was also president of Threaded Products, Inc. (with which he was involved for 22 years) and of Chicago Fastener Corporation, and secretary-treasurer of another corporation. All three companies manufacture anchor bolts and related products. Defendant Bosman, the president of defendant corporation, was general manager of another corporation which supplies concrete forms and accessories to the construction trade. They employed four salesmen who were former employees of other companies engaged in various phases of the concrete construction or supply business. Maddon further testified that there are 25 to 50 competitors in the construction supply business in the Chicago metropolitan area, seven or eight of which restrict their operations to the concrete field.

When defendant corporation was formed, a list of prospective customers was compiled from lists brought by Maddon and various of the salesmen employed by defendant corporation (including Threaded Products, Material Service Corporation and Duraform), the yellow pages of the telephone directory, trade association directories or catalogues, and the Dun & Bradstreet Metal Working list. Plaintiff's customer list was the most extensive and was used after it was received by defendant corporation early in August, 1975, as the master list to check off duplications from the other lists in preparation for a catalogue mailing to about 2300 addressees by defendant corporation.

After hearing the testimony and arguments of counsel the trial court on December 17, 1975, announced that it would grant the temporary injunction and entered the order accordingly on June 8, 1976. The order restrained defendants from soliciting business from parties listed in plaintiff's customer list except for 410 names deleted therefrom, which

appeared on certain specified lists (including Material Service, Threaded Products and Duraform), found by the court to have been in defendant's possession before acquisition of plaintiff's customer list. The order also included a finding that there was a "sufficient showing for the * * * issuance of a preliminary injunction that defendants did engage in unfair competition and did thereby gain an economic advantage by appropriating the plaintiff's customer list * * *."

Defendants contend that the issuance of the temporary injunction was error because of plaintiff's failure to prove (1) that plaintiff's customer list was wrongfully obtained by defendants, (2) that that list constituted a trade secret, (3) that actual damages were sustained or threatened, and (4) that the substantial harm caused to defendants by the issuance of the injunction was outweighed by any actual or threatened injury to the plaintiff.

■■ We consider first whether there was any evidence to establish that defendants wrongfully "appropriated" or obtained plaintiff's customer list, and whether that list constituted a trade secret. Our examination of the record reveals no evidence that any of the defendants did anything other than receive from Crittenden, plaintiff's former employee, plaintiff's customer list. Defendant corporation received other customer lists from Maddon and some of the four salesmen it had hired shortly before. Crittenden testified that it "came" to him in an envelope containing xerox copies of the cardex index cards early in August. There is no evidence in this record that Crittenden was induced by defendants to procure plaintiff's customer list, or that he was promised or given any compensation for it. There is no evidence that any of the defendants took or "appropriated" that list from the plaintiff wrongfully or by use of improper means. See *Bruce v. Ferrara* (1969), 107 Ill. App. 2d 272, 281-82.

■■ While a customer list may qualify as a trade secret, in ascertaining whether it is entitled to merit the protection of trade secrets, one of the determining factors is the extent of measures taken by the owner to guard the secrecy of the information. (Restatement of Torts §757, comment (b) (1939).) Plaintiff maintained three identical files containing as many customer lists. One was on a "secretaries desk," another in the "shop," and the third in the "annex." While McCann testified that these files were not open to the public, they were not under lock and key, and there is no evidence of any effort on the part of the plaintiff to insure that its customer list should be considered secret or confidential. (Annot., 28 A.L.R. 3d 59-60 (1969).) Moreover, there was no proof that the names on plaintiff's customer list were not publicly available to anyone by the use of, or reference to, the yellow pages of the telephone directory or trade directories in the areas served by the parties. We note that the list contains

names of well-known contractors, utility companies and various park districts and municipal bodies.

■■ We therefore conclude that the evidence was insufficient to establish that plaintiff's customer list qualified as a trade secret. (See *Heatbath Corp. v. Ifkovits* (1969), 117 Ill. App. 2d 158, 166; *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357.) Therefore, the trial court erred in entering the temporary injunction. Our holding makes it unnecessary to pass on defendants' other contentions, and is without prejudice to further proceedings, upon remand, on plaintiff's complaint for an accounting and for damages.

The judgment of the circuit court of Du Page County is therefore reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

GUILD, P. J., and SEIDENFELD, J., concur.