LINCOLN TOWERS INSURANCE AGENCY, Plaintiff-Appellant, *v.*
CHARLES FARRELL, Defendant-Appellee.

First District (1st Division)    No. 81-287

Opinion filed August 10, 1981.

Morris A. Haft, of Fisch, Lansky & Greenburg, of Chicago, for appellant.

Martin M. Mussar and Kurt M. Penn, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

The present appeal arises from an action in the chancery division of the circuit court of Cook County wherein the plaintiff, Lincoln Towers Insurance Agency, sought injunctive relief to require the defendant, Charles Farrell, to turn over a customer list which he acquired while employed as a salesman by plaintiff and to restrain defendant from soliciting certain of plaintiff's customers. The trial court initially granted a temporary restraining order but later vacated that order and denied plaintiff's motion for a preliminary injunction. On appeal, plaintiff alleges that the trial court erred in vacating the temporary restraining order and denying the preliminary injunction. Plaintiff argues that it was entitled, even absent a noncompetition or restrictive covenant agreement, to recover the confidential customer list as a form of trade secret and to enjoin defendant from soliciting certain of its customers.

For the following reasons we affirm.

The facts pertinent to the disposition of this appeal follow. Plaintiff is a Chicago insurance agency which sells, among other insurance lines, credit life insurance to Chicago area automobile dealers. Credit life insurance provides full payment of the amount due on an automobile's purchase price in the event of the death or disability of the purchaser. The defendant was employed by plaintiff for approximately three years during which time he acted as plaintiff's salesman of credit life insurance. In the course of defendant's employment with plaintiff he developed a record book which contained a list of plaintiff's credit life insurance customers and pertinent information pertaining to them including the amount given to each dealer for handling their insurance line. According to defendant, copies of these records were provided to plaintiff's president, the president's secretary, and various sales personnel during defendant's term of employment.

Defendant terminated his employment with plaintiff on or about October 6, 1980, and shortly thereafter commenced employment for another Chicago based insurance company which also sells credit life insurance. Subsequent to his termination with plaintiff insurance agency, defendant was requested to return his customer records. When defendant failed to return the records, plaintiff instigated this action. On October 10, 1980, the trial court granted a temporary restraining order. This was vacated, and defendant's motion for a preliminary injunction was denied on January 7, 1981, with the preliminary injunction denied *nunc pro tunc* to October 27, 1980. The January 7 order required defendant to supply photocopies of his records to plaintiff and it appears from the record that plaintiff complied with this order. Additionally, the trial court's findings concluded that the defendant had not executed a contract not to compete against plaintiff, and that plaintiff had no protectable interest in the

customer list and no exclusive right to deal with plaintiff's customers. It is from this order that plaintiff brings the present appeal.

■■ ■ On a petition for a preliminary injunction, the trial court is concerned with maintaining the status quo between the parties until a full hearing on the merits can be held. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 379 N.E.2d 1228; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.) The grant or denial of temporary injunctive relief is based on the circumstances at the time the relief is requested. In order to prevail on a motion for a preliminary injunction a plaintiff must prove that: (1) a clearly ascertained right exists which needs protection; (2) irreparable injury will occur without the protection of an injunction; (3) the remedy at law is inadequate; and (4) there is a likelihood of success on the merits of the case. (*Midwest Micro Media, Inc. v. Machotka* (1979), 76 Ill. App. 3d 698, 395 N.E.2d 188; *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68.) In meeting this burden the party seeking a preliminary injunction must raise a fair question as to the existence of the right claimed and that he probably will be entitled to the requested relief if he proves his allegations. (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*) In analyzing the propriety of a denial of a preliminary injunction, a reviewing court is limited to determining whether the trial judge correctly exercised his broad discretionary powers. *Egnell, Inc. v. Weniger* (1981), 94 Ill. App. 3d 325, 418 N.E.2d 915; *Image Supplies, Inc. v. Hilmert*; *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*

A number of Illinois decisions have addressed the issue of whether injunctive relief should be allowed to prevent an ex-employee from using materials or information obtained during his employment or from soliciting the employer's customers. These cases arise either in the context of an employer seeking to enforce a noncompetition or restrictive covenant agreement or where an employee seeks to prevent the use of a customer list or solicitation of an employer's customers on the basis that a trade secret is involved. In either instance, the plaintiff must establish the basis for the injunctive relief sought and, therefore, the same legal considerations prevail. The pivotal question in all such cases is whether the party seeking injunctive relief has a certain and clearly ascertainable right which needs protection or in other words a "protectable business interest."

In their decisions in this area, Illinois courts generally have sought to encourage competition in the business sector in order to avoid the restriction of an employee's freedom and the possibility of industrial servitude. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 273 N.E.2d 393; *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 212 N.E.2d 865, *cert. denied* (1966), 383 U.S. 959, 16 L. Ed. 2d 302, 86 S. Ct. 1225; *Image*

*Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68; *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 380 N.E.2d 963.) Therefore, restraints have not been lightly placed upon an employee's right to compete in a field in which he is most familiar. *ILG Industries, Inc. v. Scott.*

■■ In *Schulenburg v. Signatrol, Inc.*, the Illinois Supreme Court announced the general rule that at the termination of his employment an employee can take with him general skills and knowledge acquired; however, he cannot take confidential particularized processes or information disclosed while an employer-employee relationship existed, which are unknown to others in the industry and which give an advantage to an employer's competitors. Accordingly, a protectable business interest will be found where a trade secret or a near-permanent customer relationship exists which an employee learned of through his employment and either a "reasonable" restrictive covenant agreement has been executed or a breach of confidentiality has occurred. (See *Morrison-Metalwood Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 380 N.E.2d 963; *Midwest Micro Media, Inc. v. Machotka* (1979), 76 Ill. App. 3d 698, 395 N.E.2d 188.) As there is no allegation here that a near-permanent customer relationship existed between plaintiff and its customers, or that the defendant executed a restrictive covenant agreement, it is necessary to determine first whether plaintiff's customer list constituted a trade secret, and second, whether a breach of confidentiality occurred in obtaining the trade secret.

A trade secret has been defined as,

> "* * * a secret *plan* or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it." (Emphasis added.) (*Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 385, 212 N.E.2d 865.)

However, because trade secrets are not easily defined or characterized, the following factors are considered significant in determining whether a trade secret exists: (1) the extent to which the information is known by others in the field; (2) the extent to which the information is known by the business' employees; (3) the extent to which the employer takes measures to guard the secrecy of the information; (4) the value of the information to the employer and his competitor; (5) the amount of effort or money spent in developing the information; and (6) the ease or difficulty in acquiring or duplicating the information. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 273 N.E.2d 393; *Midwest Micro Media, Inc. v. Machotka; Bimba Manufacturing Co. v. Starz Cylinder Co.* (1969), 119 Ill. App. 2d 251, 256 N.E.2d 357; Restatement of Torts §757, comment b, at 6 (1939).) Of these factors, whether and how an employer acts to keep the information secret

appears to be the most important. (*Midwest Micro Media, Inc. v. Machotka*; *McCann Construction Specialties Co. v. Bosman* (1977), 44 Ill. App. 3d 1020, 358 N.E.2d 1340.) A determination that a trade secret exists also requires a balancing of concerns.

> "Conflicting social and economic policy considerations are present in each trade secret case. A business which may invest substantial time, money and manpower to develop secret advantages over its competitors, must be afforded protection against the wrongful appropriation of confidential information by a prior employee, who was in a position of confidence and trust. At the same time, the right of an individual to follow and pursue the particular occupation for which he is best trained is a most fundamental right. Our society is extremely mobile and our free economy is based upon competition. One who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience. These skills are valuable to such employee in the market place for his services. Restraints cannot be lightly placed upon his right to compete in the area of his greatest worth." *ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 93-94, 273 N.E.2d 393.

A number of Illinois courts have addressed the issue of whether a customer list or other customer information constitutes a protectable trade secret. (*Midwest Micro Media, Inc. v. Machotka*; *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68; *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 380 N.E.2d 963; *McCann Construction Specialties Co. v. Bosman* (1977), 44 Ill. App. 3d 1020, 358 N.E.2d 1340; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795; *Nationwide Advertising Service, Inc. v. Kolar* (1973), 14 Ill. App. 3d 522, 302 N.E.2d 734; *Kalnitz v. Ion Exchange Products, Inc.* (1971), 2 Ill. App. 3d 158, 276 N.E.2d 60.) In *Bimba Manufacturing Co.* the court explained the specific requirements necessary for business information to be characterized as a trade secret.

> "In order for business information to be a trade secret, it must have value to the business; it must take a form different from ordinarily acquired general information. For an owner's customer information to be a trade secret, it must have a particularity that gives it a business value derived from the information itself. It must be in a form susceptible to appropriation. Van Products Co. v. General Welding and Fabricating Co., 419 Pa 248, 213 A2d 769 (1965). Information which is a mere distillation of general knowledge common to a particular trade, is not a trade secret." (119 Ill. App. 2d 251, 263-64.)

That a customer list may be considered a trade secret under proper

circumstances and protected as such is consistent with the fact that trade secrets are protected to encourage the development of new inventions, processes and business techniques and to maintain commercial mortality. *Brunswick Corp. v. Outboard Marine Corp.* (1980), 79 Ill. 2d 475, 404 N.E.2d 205.

After reviewing the decisions in this area, we find that Illinois courts have held that a customer list or other customer information constitutes a trade secret in which an employer holds a protectable interest where the list has been developed by the employer over a number of years (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414; *Messenger Publishing Co. v. Mokstad* (1930), 257 Ill. App. 161; *Boylston Coal Co. v. Rautenbush* (1925), 237 Ill. App. 550), the employer developed the list at great expense (*Messenger Publishing Co. v. Mokstad*; *Boylston Coal Co. v. Rautenbush*), and the information was kept under lock and key. (*Messenger Publishing Co. v. Mokstad*; *Armour & Co. v. United American Food Processors.*) However, the same type of information has not been held to be a trade secret where it has not been treated as confidential and secret by the employer (*Image Supplies, Inc. v. Hilmert*; *McCann Construction Specialties Co. v. Bosman*), was generally available to other employees (*Image Supplies, Inc. v. Hilmert*; *McCann Construction Specialties Co. v. Bosman*; *Kalnitz v. Ion Exchange Products, Inc.*), the information was known to those in the field or could be easily duplicated by reference to telephone directories, or professional publications (*Midwest Micro Media, Inc. v. Machotka*; *Image Supplies, Inc. v. Hilmert*; *TAD, Inc. v. Siebert*; *McCann Construction Specialties Co. v. Bosman*; *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 228 N.E.2d 742), and where customers did business with more than one company or otherwise changed businesses frequently so that they were known to an employer's competition. *Image Supplies, Inc. v. Hilmert*; *TAD, Inc. v. Siebert*; *McCormick v. Empire Accounts Service, Inc.*

■■ Where a customer list or customer information constitutes a trade secret and no restrictive covenant exists, it is necessary to determine whether the employee obtained the trade secret through a breach of confidentiality. This is essential because, as the supreme court has recognized in *ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 273 N.E.2d 393, and *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 212 N.E.2d 865, a trade secret may be obtained through legal means as for example where a product is duplicated through reverse engineering. An employee breaches his confidential relationship with his employer where he acts in a manner inconsistent with his employer's interest during his employment

in that he surreptitiously copies or memorizes trade secret information for use after his termination in the solicitation of his employer's customers or utilizes information in his possession to develop a product to compete with his employer's product while still in his employ. *ILG Industries, Inc. v. Scott*; *Schulenburg v. Signatrol, Inc.*; *Revcor, Inc. v. Fame, Inc.*

*Image Supplies, Inc. v. Hilmert* and *Midwest Micro Media, Inc. v. Machotka* are factually analogous to the instant case. In *Image Supplies, Inc.* the plaintiff was involved in the printing trade. The defendant, a salesman with plaintiff, had executed an employment agreement with a restrictive covenant. At the termination of the agreement defendant was hired by a competitor. Plaintiff alleged that because the field was highly competitive the defendant's knowledge of certain pricing information and discounts given to certain of plaintiff's customers could be used by his competitor to their advantage. The record revealed that the customer files were kept in an unlocked cabinet in a room where a variety of secretaries had access to them and that the pricing information was generally available to all employees. Moreover, the names of plaintiff's customers could be found in the phone book and in professional publications. Additionally, customers often dealt with more than one company in this field at the same time and so plaintiff's customers were known to others in the field. In finding that the customer list and pricing information was not a trade secret, the court stressed the ease in which the information could be duplicated and that customers were generally well known to plaintiff's competitors.

In *Midwest Micro Media, Inc.* the facts also indicated that the customer names were readily obtained and consequently the court determined that there was no dispute as to the fact that the list itself was not a trade secret. The court then went on to discuss the plaintiff's argument that it was the defendant's knowledge about each customer which was a trade secret. The court rejected this argument commenting that the defendant's "* * * knowledge of the individual customers is closely akin to his personal skills and abilities as a salesman and thus cannot be considered plaintiff's property." 76 Ill. App. 3d 698, 704.

The plaintiff contends that the trial court should have granted its motion for a preliminary injunction because the defendant surreptitiously took plaintiff's customer list which constituted a trade secret. From our reading of the record it does not appear that the plaintiff treated the customer list as confidential. Plaintiff's president, Roger Wolf, testified that only three people had access to the customer list; however, defendant testified that he prepared the records constituting the customer list and gave a copy not only to Wolf and to his secretary but also to several members of the sales staff. Moreover, defendant suspected that several

ex-sales people had access to the information because they had solicited some of his customers. Nor was the information such that it was secret in nature. Defendant's expert witness, Peter McWilliams, who had 15 years experience in the credit life insurance field, testified that the names of customers could be obtained from the Yellow Pages or from available mailing lists. He also noted that information as to pricing and the discounts given to a particular dealer could be obtained directly from the dealer. He explained that customers often dealt with more than one agency and that a customer would tell one agency what it was getting in the way of a discount from another agency to see if it could get a better deal. He did admit that sometimes a dealer would lie about a discount. The defendant also noted that he generally knew what any agency was giving to a dealer in the way of a discount. There was no evidence in the record as to the amount of effort expended by plaintiff in acquiring this information. The record does reveal, however, that the information was collected from defendant's efforts. It was contested whether plaintiff requested the gathering of this information or whether defendant obtained the information in order to perform his job. We also note that the record reveals that Wolf testified that this information was invaluable to plaintiff and that if competitors knew about the information it would act to plaintiff's disadvantage.

■■ From the above it appears that the trial court could properly conclude that the information contained in the customer list was known to other insurance companies who participate in the credit life and disability field, that various employees of the plaintiff had access to this information, that plaintiff made little or no effort to guard the secrecy of the information, that the information was useful to someone dealing in this field, that little or no effort was directly expended by plaintiff in obtaining this information and that the information could easily be duplicated. Here, as in *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68, the industry was competitive and customers often dealt with more than one company. Moreover, as in both *Image Supplies, Inc.* and *Midwest Micro Media, Inc. v. Machotka* (1979), 76 Ill. App. 3d 698, 395 N.E.2d 188, customers were easily duplicated as the customers' names were found in public directories. Most importantly, in *Image Supplies, Inc.*, as is evident here, the plaintiff did not treat the information as confidential or secret until litigation was initiated. Indeed, in *Image Supplies, Inc.*, the pricing information available even included discounts to customers similar to those found here. From the record it appears that a total stranger to this field could through the use of the phone book and a few phone calls substantially find out exactly what the plaintiff alleges is very confidential information. Accordingly, we believe that the plaintiff's customer list was

not a trade secret and that the trial court, therefore, properly determined that plaintiff had no protectable business interest in the customer list such as to warrant the requested injunctive relief.

Plaintiff seeks to distinguish these two cases on the basis that the insurance industry is significantly different from either the printing or hospital supply industries involved in *Image Supplies, Inc.*, and *Midwest Micro Media, Inc.* However, he fails to explain the basis for this distinction. We find none. The plaintiff also places great reliance upon *Messinger Publishing Co. v. Mokstad* (1930), 257 Ill. App. 161, and *Boylston Coal Co. v. Rautenbush* (1925), 237 Ill. App. 550. We have examined these cases and find that they are factually distinguishable. In each the plaintiff expended a substantial amount of money in developing the customer list involved and in each case the list was kept secure and confidential in plaintiff's place of business. The plaintiff argues in its brief that the defendant's salary constituted the amount of money which plaintiff expended for the development of the instant customer list. It is not apparent from the record that this argument was raised below. Nor do we think that it can reasonably be said that defendant's whole salary was paid for the collection of this information as this was hardly a major part of his job, but rather an ordinary record-keeping technique.

In that we have found that the instant customer list was not a trade secret, it is not necessary to consider whether the defendant's possession of the list was achieved through a breach of his confidential relationship with his employer. Nor do we find it necessary to determine whether the trial court's order requiring the defendant to provide plaintiff a copy of the customer list was improper. Accordingly, the interlocutory order of the circuit court of Cook County denying plaintiff's motion for a preliminary injunction is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.