TIE SYSTEMS, INC., Plaintiff-Appellee, v. TELCOM MIDWEST, INC., d/b/a Telcom Midwest, Ltd., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—89—2654

Opinion filed September 12, 1990.

Joe R. Milburn and John A. Clark, both of Kanter & Mattenson, Ltd., of Chicago, for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Richard C. Clark, David R. Ganfield, and Edward M. Kay, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Defendants Telcom Midwest, Inc., Michael Fainman, James Van Wolvelear, Sandra Priola, Melissa Friedow, David Bandy, and Cyrel Scher have filed an interlocutory appeal from the circuit court's grant of a temporary restraining order in favor of plaintiff Tie Systems, Inc. Defendants argue that the court's order was against the manifest weight of the evidence and overly broad.

On November 29, 1987, TIE/Communications, plaintiff's parent company, purchased the assets of the Honeywell Communications Services Business. The purchase included Honeywell's contracts, its service and maintenance agreements with customers, and its customer lists and related data. On the same date, plaintiff was formed and the Honeywell customer lists and maintenance agreements were transferred to it. The individual defendants are former Honeywell employees who came to work for plaintiff after the acquisition.

In July 1989, plaintiff filed a five-count complaint for injunctive relief charging defendants with breach of contract, misappropriation of trade secrets, tortious interference with contractual relations, conspiracy, and violation of the Illinois Trade Secrets Act (Ill. Rev. Stat.

1987, ch. 140, pars. 351 through 359). Plaintiff alleged that the corporate defendant, Telcom, was formed by Michael Fainman in February 1989 and that the individual defendants left plaintiff's employ for Telcom between February 1, 1989, and May 1, 1989. Plaintiff further alleged that the individual defendants acquired confidential and proprietary information while employed with plaintiff and were using that information for the benefit of Telcom.

In August 1989, plaintiff filed motions for a temporary restraining order and a preliminary injunction. In its motions, plaintiff alleged that it had near-permanent and ongoing relationships with its customers and that it maintained a confidential customer list, service and maintenance agreements, and other confidential and proprietary information. Plaintiff further alleged that defendants had obtained this information and were using it to solicit plaintiff's customers and interfere with its customer relations. Plaintiff alleged that as a result of defendants' activities plaintiff had sustained severe and irreparable injury to its long-standing customer accounts and an erosion of its business, including loss of customer accounts.

At a hearing on plaintiff's motions, Raymond Baker testified that he became president of plaintiff nine months after the Honeywell acquisition, that approximately 1,100 of plaintiff's 4,000 customers were obtained in the acquisition, and that plaintiff spent in excess of $1 million a year in maintaining its customers. Baker also testified that in recent months plaintiff had lost a number of customers to Telcom and that contract cancellations were occurring on a daily basis.

Baker testified that after he became president, he took steps to protect plaintiff's customer lists and other proprietary information by developing a computerized customer list and eliminating the Honeywell practice of releasing complete customer lists to prospective customers. Another step taken was the removal of sales files from the salespersons' desks to a central filing area. Baker testified that the sales files contained information about the customers' phone systems, their maintenance contracts, work done subsequent to the installation of the systems, and customer cut-over dates.

Baker explained that cut-over dates were the dates on which customers would renew their contract with plaintiff or buy services or other materials based on the contract. According to Baker, the dates were important because other vendors might be able to persuade a customer to do business with them by contacting the customer at the cut-over date. Baker also stated that unlike the customer lists, renewal dates and cut-over dates were kept confidential and never disseminated to prospective customers.

Julie Koster and Margaret Stayart, employees in plaintiff's customer service department, testified that during the last week of April 1989, they saw Cyrel Scher going through plaintiff's filing cabinets and removing a large number of files. Koster stated that a salesperson usually would not need such a large amount of files. Koster also stated that the area in which the files were stored was open to all employees and that the file cabinets were not locked.

Bob Elstner, an installation supervisor, testified that near the end of April 1989, he observed Scher carrying an armload of files to her car. Elstner claimed it was unusual for a salesperson to remove such a large amount of files from the building.

Jeffrey Jolitz, purchasing manager for one of plaintiff's customers testified that on May 10, 1989, one month before his cut-over date, he was contacted by Scher on behalf of Telcom. Jolitz testified that Scher offered to service his company at a percentage of the price charged by plaintiff.

Subsequently, Julie Koster was recalled to testify concerning newly discovered evidence. Koster testified that she had recently discovered that approximately 500 of plaintiff's sales files were missing and that defendants had been responsible for the majority of the customers whose files were missing. A list of the names of the customers whose files were missing was admitted into evidence over defendants' objection. The list included Jeffrey Jolitz's company.

Michael Fainman was called as a witness on defendants' behalf. He testified that he began working for Honeywell in 1983 and that it was Honeywell's practice to distribute complete customer lists with every proposal. Fainman testified that this practice continued during the period immediately after the plaintiff corporation was formed but was discontinued in October 1988, when the information was stored on plaintiff's computer system. Fainman stated that neither he nor the other individual defendants had access to plaintiff's computer system.

Fainman testified that he resigned from plaintiff's employ on February 1, 1989, and that Telcom was incorporated on February 24, 1989. Fainman stated that at the time of the hearing Telcom had approximately 150 customers and that 50% to 60% of them were formerly plaintiff's customers. Fainman stated that Telcom obtained its customers by contacting those customers the individual defendants had formed relationships with while employed at Honeywell.

When questioned about cut-over dates, Fainman stated the dates were important because contracts were signed on those dates and because they provided a reference point for payments and warranties.

However, Fainman testified that it was not necessary to have any particular documents to determine a cut-over date because the information could be obtained from the customer or Illinois Bell. On cross-examination, Fainman testified that it was not normal procedure to give out cut-over dates and that Illinois Bell would not release information about cut-over dates without the customer's permission.

On September 5, 1989, the trial court entered a memorandum order granting plaintiff's motion for a preliminary injunction. The order stated that, while plaintiff's customer lists were generally distributed and could be obtained from many sources, there was no indication that the termination dates were known to anyone but the customers and plaintiff's employees. The court found that the dates amounted to a trade secret, that defendants' acquisition of and use of them was inconsistent with the interests of their former employer, and that defendants should be enjoined from soliciting plaintiff's customers and from disclosing or using the dates pending the outcome of the litigation. Defendants have filed an interlocutory appeal from the trial court's grant of the preliminary injunction.

■ To prevail on a motion for a preliminary injunction, a plaintiff must prove that: (1) it possesses a clearly ascertainable right which needs protection; (2) irreparable injury will occur without the protection of a an injunction; (3) the remedy at law is inadequate; and (4) there is a likelihood of success on the merits of the case. *Cincinnati Tool Steel Co. v. Breed* (1985), 136 Ill. App. 3d 267, 482 N.E.2d 170; *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 425 N.E.2d 1034.

■ The decision to grant or deny injunctive relief rests within the sound discretion of the trial court and its findings may not be disturbed absent a showing of an abuse of discretion. (*Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 490 N.E.2d 1302.) In reviewing a trial court's action on a motion for a preliminary injunction, this court's role is limited to determining whether the trial court correctly exercised its broad discretionary powers. *Lincoln Towers*, 99 Ill. App. 3d at 355.

Defendants argue on appeal that the trial court's grant of a preliminary injunction in plaintiff's favor was contrary to the manifest weight of the evidence. Defendants contend that plaintiff failed to establish that it had any protectible business interests or that there was a likelihood that it would be successful on the merits.

Defendants devote several pages of their brief to the argument that plaintiff's customer lists were not confidential and did not constitute a protectible business interest. Defendants ignore the fact that

the trial court held that plaintiff had a protectible interest in the cut-over dates, not the customer lists. Thus, the confidentiality of the customer lists is not at issue and we are concerned only with whether the trial court properly found that plaintiff had a protectible business interest in the cut-over dates.

The record reveals that the defendants did not sign confidentiality agreements or enter into restrictive covenants while employed by plaintiff. In this situation, a protectible business interest will be found where a trade secret or a near-permanent customer relationship existed and a breach of confidentiality occurred. (*Lincoln Towers*, 99 Ill. App. 3d at 356.) In the present case, the trial court found that plaintiff's cut-over dates constituted a trade secret.

■ A trade secret has been defined as a secret plan, process, tool, mechanism, or compound known only to its owner and those of his employees to whom it is necessary to confide. (*Palin Manufacturing Co. v. Water Technology, Inc.* (1982), 103 Ill. App. 3d 926, 431 N.E.2d 1310.) The factors considered in determining whether information constitutes a protectible trade secret include the extent that information is known outside the employer's business, the extent the information is known by employees and others in the business, the extent of measures taken by the employer to guard the information, the value of the information to the employer and competitors, the effort or money spent in developing the information, and the ease or difficulty with which the information can be acquired or duplicated. (*Burt Dickens & Co. v. Bodi* (1986), 144 Ill. App. 3d 875, 494 N.E.2d 817; *Smith Oil Corp. v. Viking Chemical Co.* (1984), 127 Ill. App. 3d 423, 468 N.E.2d 797.) In *Burt Dickens*, this court held that, under certain circumstances, expiration dates could constitute a trade secret. *Burt Dickens*, 144 Ill. App. 3d at 880-82.

■ In the present case, both Michael Fainman and plaintiff's president Raymond Baker testified to the value of the cut-over dates and both testified that the dates normally would not be disclosed to those outside of the business. On the issue of the measures plaintiff took to guard the cut-over dates, the testimony of plaintiff's employees indicates that the customer files containing the cut-over dates were not kept under lock and key and that all employees had access to the files during business hours. However, the absence of precautions restricting access to the information does not establish that the information is not confidential, particularly where, as here, there is evidence that a former employee removed files from the employer's premises. *Cincinnati Tool Steel Co.*, 136 Ill. App. 3d at 279; *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 451 N.E.2d 1338.

In arguing that the information concerning cut-over dates was not a trade secret, defendants point to Fainman's testimony that the dates could be obtained from the customers themselves. However, the fact that the expiration dates could be obtained from customers was not found to be controlling in *Burt Dickens*. There, this court upheld a finding that the dates were trade secrets, stating that it would be a monumental task to duplicate plaintiff's customer expiration dates by contacting each of plaintiff's 1,600 customers. (*Burt Dickens*, 144 Ill. App. 3d at 882.) We find that our earlier holding is applicable in the present case, where plaintiff had 4,000 customers (1,100 of whom were former Honeywell customers) and where obtaining the cut-over dates would entail a similar effort.

Thus, we hold that the evidence presented supports the trial court's finding that the dates constituted a trade secret. We now turn to the issue of whether defendants obtained the information through a breach of confidentiality.

■ A breach of confidentiality occurs when an employee acts in a manner inconsistent with his employer's interest by surreptitiously copying or memorizing secret information for use after his termination in the solicitation of his employers customers. (*Prudential Insurance Co. of America v. Van Matre* (1987), 158 Ill. App. 3d 298, 511 N.E.2d 740; *Burt Dickens*, 144 Ill. App. 3d at 882; *Lincoln Towers*, 99 Ill. App. 3d at 358-59.) As we stated above, there is evidence in the present case that one of the defendants removed a large number of files from plaintiff's central filing area one week before she left plaintiff's employ. In addition, there was testimony that a large number of plaintiff's files were missing.

■ Defendants argue that the trial court erred in admitting evidence about the missing files. We disagree.

Julie Koster testified that the list of missing files was prepared at the instruction of her department manager, after it was discovered that some customers had cancelled their maintenance agreements with plaintiff. Koster stated that the list was prepared by going through the main file, which contained folders on all plaintiff's customers, and then checking the sales files to determine whether there was a corresponding file for each customer. The list contained the names of the customers for whom Koster found no corresponding sales files. On cross-examination, Koster testified that she did not know whether sales files ever existed for every name on the list. However, she also testified that during the course of her duties she had come into contact with sales files for some of the customers on the list and that those files were now missing.

Defendants claim that the list was inadmissible as a business record because there was no evidence that plaintiff had previously prepared this type of list. Defendants also attack the reliability of the list, arguing that Koster's testimony demonstrates that the list was not based on her personal knowledge, but on her assumption that sales files had been prepared for every name on the list.

Supreme Court Rule 236 (107 Ill. 2d R. 236) provides that any writing or record made as a memorandum of an occurrence or event is admissible as evidence of that occurrence or event if made in the regular course of business and if it was in the regular course of business to make such a writing or record at the time of such occurrence or event or within a reasonable time thereafter.

We find that plaintiff's list was admissible under Rule 236. We do not believe a contrary finding is required simply because plaintiff had never before made such a list. The fact that a record was made in response to a singular occurrence or event does not require a conclusion that it was not made in the regular course of business. See *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 487 N.E.2d 798; *Newark Electronics Corp. v. City of Chicago* (1970), 130 Ill. App. 2d 1021, 264 N.E.2d 868.

Rule 236 also provides that circumstances surrounding the making of a writing or record, including lack of personal knowledge by the maker, will affect the weight given the writing or record, not its admissibility. Accordingly, there is no merit to defendants' argument concerning Koster's lack of personal knowledge.

■ We find that the trial court properly considered the list in granting plaintiff's motion. We also find that the list of missing files, together with the testimony that one of the defendants was seen removing files from plaintiff's premises, was sufficient to support a conclusion that defendants obtained confidential information through a breach of confidentiality.

Having found that there was evidence of a protectible interest, we now consider whether plaintiff has established a likelihood of success on the merits.

■ To establish a likelihood of success on the merits, it is not necessary that a plaintiff make out a case which in all events will warrant relief at the final hearing. (*Williams & Montgomery, Ltd. v. Stellato* (1990), 195 Ill. App. 3d 544, 522 N.E.2d 1100; *Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 549 N.E.2d 793; *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418.) All that is necessary is that the plaintiff raise a fair question as to the existence of a right needing protection, leading the court to be-

lieve that the plaintiff will be entitled to the prayed-for relief if the proof presented at trial should sustain its allegations. *Disher v. Fulgoni* (1984), 124 Ill. App. 3d 257, 464 N.E.2d 639.

We have already found that there was evidence to support the trial court's finding that a protectible right exists. We now find that the trial court could properly conclude that plaintiff would be entitled to relief if it sustained its allegations that defendants removed plaintiff's files and used the cut-over dates contained therein to solicit plaintiff's clients.

■ In light of the foregoing, we find no error in the trial court's granting of plaintiff's motion for a preliminary injunction.

Defendants argue that even if injunctive relief was proper, the trial court's order was overly broad. They contend that if the court's order was based on its belief that defendants were using the cut-over dates contained in the missing files to solicit plaintiff's customers, the injunction order should have been limited to the customers whose files were missing.

Relying on *Burt Dickens*, plaintiff argues that the injunction order was not overly broad. In *Burt Dickens*, while employed by plaintiff, an insurance agency specializing in aviation policies, defendant compiled a list of plaintiff's customers along with the expiration dates of their policies. After leaving plaintiff's employ, defendant began using the expiration dates to solicit plaintiff's customers. This court found that the dates were trade secrets and upheld the trial court's order enjoining defendant from soliciting any of plaintiff's customers. The court rejected defendants' argument that the order was overly broad because it prohibited him from using sources other than the list to solicit plaintiff's customers. The court stated that it would be impossible to determine whether defendant was using the list or other means to solicit plaintiff's customers. *Burt Dickens*, 144 Ill. App. 3d at 885.

We find that the situation in *Burt Dickens* is distinguishable from that in the present case. Here, plaintiff has alleged that a certain number of files are missing and that defendants are using the cut-over dates in those files to solicit plaintiff's customers. There has been no claim that defendants acquired or copied the cut-over dates of plaintiff's other customers and there was testimony that defendants maintained personal relationships with some of the customers. Accordingly, we hold that the injunction order was overly broad and that defendants should be prohibited from contacting only those customers whose files are missing.

■ Defendants also argue that the court's order was deficient

because it failed to comply with the requirements of section 11—101 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 11—101.) This argument is without merit. The court's injunction order contained its finding that the cut-over dates were a trade secret, it stated the reasons for the entry of the injunction, and it specified the acts to be enjoined. Thus, the order clearly met the requirements of section 11—101.

■■ Finally, defendants argue that plaintiff failed to establish its standing to assert its claims against defendants. Defendants argue that there was no evidence establishing that plaintiff had any ownership rights in the Honeywell assets acquired by TIE/Communications and that, therefore, the trial court erred in finding that plaintiff had a protectible interest in the assets. This argument also is without merit.

Plaintiff's president, Raymond Baker, testified that in August 1988, TIE/Communications acquired his previous company, Teletek, and merged it with plaintiff. Baker testified that following the merger plaintiff's assets, including customer information and other assets acquired in the Honeywell purchase, were transferred to his charge. We believe that this evidence is sufficient to establish that plaintiff has a real interest in the cause of action. *Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 371 N.E.2d 881; and see *General Motors Acceptance Corp. v. Elder* (1960), 24 Ill. App. 2d 55, 163 N.E.2d 721.

In conclusion, the order of the trial court enjoining defendants from soliciting plaintiff's customers is affirmed. However, we restrict application of the injunction to the approximately 500 customers whose files plaintiff alleges are missing.

Affirmed with restriction.

RIZZI and FREEMAN, JJ., concur.