EGNELL, INC., Plaintiff-Appellee, *v.* GOTTHILF WENIGER *et al.*, Defendants-Appellants.

First District (1st Division)     No. 80-3162

Opinion filed March 16, 1981.

Norman J. Barry, Joseph P. Della Maria, Jr., and Edward C. McCarthy, all of Chicago (Rothschild, Barry & Myers, of counsel), for appellants.

Mark S. Lieberman and Robert W. Dziubla, both of Rosenthal & Schanfield, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Egnell, Inc. (plaintiff), brought this action against Gotthilf Weniger and Medela, Inc. (defendants), seeking injunctive relief and damages based upon claims of unfair competition, breach of contract and breach of fiduciary duty. After an evidentiary hearing, the trial court entered a preliminary injunction against both defendants. Defendants appeal.

To fully understand the details of this case, it is necessary to describe the corporations involved. Ameda AG (Ameda) is a Swiss corporation engaged in manufacturing and distributing medical equipment, including the unpatented Egnell breast pump. Prior to the circumstances of this suit, Ollee Larsson (Larsson) was chairman of the board and managing director of Ameda. Werner Krahenbuhl (Krahenbuhl) was chief executive officer of Ameda until January 1980. The controlling interest in Ameda was represented by Holger Infeldt (Infeldt).

Until the circumstances of this suit occurred, the exclusive Swiss agent of Ameda with respect to the Egnell breast pump was Medela AG, a Swiss corporation. Larsson was chairman of the board of Medela AG, while Krahenbuhl was its chief executive officer.

Plaintiff was organized in 1975. Plaintiff is a wholly owned subsidiary of Ameda, and has been the American distributor of the Egnell breast pump since its inception. Larsson and Krahenbuhl were installed as directors of plaintiff with Larsson also acting as president.

Defendant Gotthilf Weniger (Weniger) was the organizer of plaintiff. Pursuant to his 1975 employment contract with plaintiff, Weniger initially held the position of vice-president thereof. Weniger's employment contract explicitly stated in paragraph 6 thereof:

"Weniger hereby agrees that througout [sic] the two-year period commencing on the termination of his employment hereunder for whatever reason he will not directly or indirectly, be or become engaged or financially interested in, or an officer or director, employee, consultant or advisor of or to, any business, firm or corporation which engaged anywhere in the United States or

Canada in any business which competes in any way with Egnell in the conduct of any business conducted by Egnell at any time during the term of Weniger's employment hereunder * * *."

Weniger became president and treasurer of plaintiff in March 1979. In July 1979, Weniger contacted Elizabeth Lemon, a representative of La Leche League International, for purposes of marketing the Egnell breast pump in Canada. Mrs. Lemon met with Weniger and Krahenbuhl in September 1979 for further development of these plans.

On November 2, 1979, Krahenbuhl met with Weniger to discuss an Ameda management dispute between Larsson and Infeldt. Shortly thereafter, Weniger requested that an updated employment contract between himself and plaintiff be prepared without a restrictive covenant. A contract was so prepared, and was signed by Weniger in December 1979. Krahenbuhl and Larsson both signed the agreement as directors of plaintiff.

In January 1980, Larsson sold his Ameda stock and resigned from all positions with Ameda. On January 28, 1980, Krahenbuhl also resigned from both Ameda and plaintiff. Both men retained their positions with Medela AG.

On February 22, 1980, Weniger submitted his resignation from plaintiff, effective August 22, 1980. At approximately this time, Infeldt made inquiries to Weniger concerning plaintiff's plans for the Canadian market, but received no response.

In April 1980, Krahenbuhl wrote to Mrs. Lemon on Medela AG stationery concerning "the rental of the Breast Pump in Canada." Subsequently, Krahenbuhl sought to hire Mrs. Lemon to distribute Medela AG's breast pump. It is unclear whether the severance of Medela AG from plaintiff and Ameda was explained to Mrs. Lemon, but Krahenbuhl reportedly told her to avoid communication with plaintiff.

Weniger continued to be employed as president of plaintiff until August 22, pursuant to his contract. However, in May 1980, Weniger signed contracts with Medela AG concerning the formation and operation of the defendant Medela Company, now known as Medela, Inc., by change of name, as a North American subsidiary of Medela AG. Weniger contributed funds towards capitalization of Medela, Inc., and received a seat on its board of directors. Weniger also made preliminary arrangements towards setting up the business of Medela, Inc. These arrangements included leasing office space, preparing budget and distribution plans, and submitting an application for approval of the Medela, Inc., breast pump with Underwriters Laboratories.

On May 30, 1980, Weniger wrote to Infeldt and indicated he would soon be working in competition with plaintiff. Weniger did not disclose his relationship with Krahenbuhl and Larsson. In July 1980, Infeldt

personally contacted Mrs. Lemon concerning the Egnell breast pump. Mrs. Lemon is now an employee of Egnell Medical Incorporated, another Ameda subsidiary formed on August 15, 1980.

Weniger's employment with plaintiff terminated on August 22, 1980. Weniger began his employment with Medela, Inc. on September 1, 1980. On August 27, 1980, Mrs. Lemon was contacted by Kent DiVerde, a former employee of plaintiff now employed by Medela, Inc. He reportedly told her Medela, Inc., was the company of the future, as plaintiff was disintegrating. On August 8, 1980, Ameda sued Medela AG and Larsson in Switzerland. Plaintiff filed the instant complaint against Weniger and Medela, Inc. on September 11, 1980.

After an evidentiary hearing the trial court entered a preliminary injunction against both Weniger and Medela, Inc. The court found Weniger to be bound by the restrictive covenant in his 1975 employment contract, and enjoined him from "engaging in the sale or distribution of electric breast pumps and of accessories thereto, and from employment with any person or company engaged in such sale or distribution." The trial court found Medela, Inc., guilty of unfair competition, and enjoined it from "selling, distributing, or promoting electric breast pumps and accessories thereto."

"A preliminary injunction is an extraordinary remedy which should be granted with the utmost care." (*Bally Manufacturing Corp. v. JS&A Group, Inc.* (1980), 88 Ill. App. 3d 87, 92, 410 N.E.2d 321.) As a prerequisite for such an injunction to issue, "the plaintiff must establish the threat of irreparable injury and the likelihood of [its] success on the merits." (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 290, 389 N.E.2d 1300.) The plaintiff "must establish to the satisfaction of the trial court that he will probably be entitled to the relief requested if the proof should sustain his allegations." (72 Ill. App. 3d 285, 291.) "The trial court must also conclude that the need for temporary relief outweighs the possible detriment to the defendant." 72 Ill. App. 3d 285, 291.

■■ "The issuance of a preliminary injunction is addressed to the sound discretion of the trial court." (*Donald McElroy, Inc.*, 72 Ill. App. 3d 285, 291.) Thus, on appeal, the reviewing court is limited to a determination of whether the trial court properly exercised its broad discretionary powers in refusing or granting the injunction. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, 390 N.E.2d 68; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, *appeal denied* (1975), 60 Ill. 2d 602.) Accordingly, we must determine whether, on the basis of the evidence produced at the evidentiary hearing on plaintiff's motion for a preliminary injunction, as above summarized, the trial court abused its discretion. *Donald McElroy, Inc.*, 72 Ill. App. 3d 285, 291.

## I.

■■ The trial court found defendant Weniger bound by the restrictive covenant in his 1975 employment agreement with plaintiff. Thus, we must first consider the validity of the covenant. It is an accepted principle of law that the enforceability of a restrictive covenant "in restraint of competition is conditioned upon its reasonableness in terms of its effect upon the parties to the contract and the public." (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21.) "Illinois courts, through recent decisions, have encouraged fair competition in business while exhibiting an abhorrence of restraint of trade." (*TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1004, 380 N.E.2d 963, *appeal denied* (1978), 71 Ill. 2d 621.) For this reason, covenants not to compete are carefully scrutinized by the courts. *Image Supplies, Inc.* 71 Ill. App. 3d 710, 713.

The restrictive covenant in this case may be held enforceable only if its time limit and geographical scope are reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary to protect a legitimate business interest. (*Image Supplies, Inc.*, 71 Ill. App. 3d 710, 713.) "Whether [the] restrictive covenant is enforceable is a question of law." 71 Ill. App. 3d 710, 712.

■■ We find the restrictive covenant at issue to be unreasonably broad. As written, the covenant contains no actual geographic limitation, as it would prohibit Weniger from working for two years for any company which had competed with plaintiff in the United States or Canada during the five years of Weniger's employment with plaintiff. Pursuant to this restriction, Weniger would not be able to work anywhere in the world for a firm which had competed in any manner with plaintiff in the United States or Canada for the past five years. Plaintiff has not demonstrated any compelling reason for such a broad restriction. The burden placed on Weniger far exceeds what would have been necessary for the protection of plaintiff's interests. We therefore conclude the restrictive covenant to be an unreasonable restraint of trade and therefore void and unenforceable as a matter of law. See *House of Vision, Inc.* 37 Ill. 2d 32.

■■ Because the covenant as written is void and unenforceable, this court need not consider the actions taken by Weniger, Larsson, and Krahenbuhl in deleting the covenant from Weniger's employment contract of December 1979. We note, however, that the fiduciary duty of loyalty of a director to his corporation precludes him from acting to delete a restrictive covenant in his own contract to the detriment of his corporation. (See *Weiss Medical Complex, Ltd. v. Kim* (1980), 87 Ill. App. 3d 111, 115-16, 408 N.E.2d 959.) Weniger's actions as a fiduciary have no materiality to the validity of the restrictive covenant and to the merits of the injunctional relief granted. Substantive issues pertaining to any breach

of fiduciary relationship are not before us on this appeal. These issues await resolution after trial on the merits.

## II.

■■ The trial court enjoined defendant Medela, Inc. from "selling, distributing, or promoting electric breast pumps and accessories thereto." Plaintiff urges this ruling be upheld as Medela, Inc. engaged in unfair competition in violation of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 311 et seq., hereinafter referred to as the Act). Section 3 of the Act provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction * * *." (Ill. Rev. Stat. 1979, ch. 121½, par. 313; see also Bonner v. Westbound Records, Inc. (1977), 49 Ill. App. 3d 543, 547, 364 N.E.2d 570.) For such an injunction to be issued, the plaintiff "must first show that he is likely to be damaged by another's deceptive trade practice." Bonner, 49 Ill. App. 3d 543, 548.

Plaintiff contends the defendants' actions involving Mrs. Lemon constituted an enjoinable unfair trade practice as defined in the Act. (See Ill. Rev. Stat. 1979, ch. 121½, par. 312.) Plaintiff alleges defendants violated numerous provisions of the Act, such as causing confusion or misunderstanding as to the actual sponsorship of defendants' breast pump and by the disparagement of plaintiff.

"The Uniform Deceptive Trade Practices Act was designed to provide a remedy to be utilized where a likelihood of confusion or misunderstanding exists or may exist in the public's mind as to goods or services." (Bonner, 49 Ill. App. 3d 543, 548-49.) The likelihood of confusion must, however, be more than a mere possibility. "[T]here must be more than the mere allegation that confusion occurred, to the injury of the plaintiff." Customs Business Systems, Inc. v. Boise Cascade Corp. (1979), 68 Ill. App. 3d 50, 54, 385 N.E.2d 942.

We find the defendants' actions in the instant case insufficient to satisfy this standard. The only party allegedly confused or misled by defendants' representations and actions was Mrs. Lemon. Mrs. Lemon, however, became an employee of Egnell Medical Incorporated, a subsidiary of Ameda AG in August 1980. Surely, any confusion on her part must have terminated at that time. That an employee of Medela, Inc., may have subsequently disparaged plaintiff to her does not alter the fact that Mrs. Lemon was unlikely to be confused or misled.

■■ This court acknowledges the language of the Act which states "a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." (Ill. Rev. Stat. 1979, ch. 121½, par. 312.) However, the Act was designed to prevent the "palming off" of one's goods as another's and the resultant consumer confusion, and not the

similarity of products. (See *McDonald's Corp. v. Gunvill* (N.D. Ill. 1977), 441 F. Supp. 71, 75.) At the date of the preliminary injunction hearing, defendants had not sold even a single breast pump. We also note the Egnell breast pump is not patented, nor is it the only device of its type currently available in the United States and Canada. A preliminary injunction which totally prohibits Medela, Inc., from marketing their breast pump is far too broad to insure reasonable protection to plaintiff. We, therefore, are impelled to find the issuance of this injunction was an abuse of the trial court's discretion, and it should be reversed.

We must stress that this opinion is directed solely to the issuance of the preliminary injunctions. We have not considered the merits of this case, nor have we attempted to resolve controverted factual issues. (See *Bally Manufacturing Corp.*, 88 Ill. App. 3d 87, 94.) The questions of fiduciary duties and damages, if any, are substantive issues which remain pending trial on the merits.

For these reasons, the order of the circuit court issuing the preliminary injunctions is reversed.

Order reversed.

McGLOON and O'CONNOR, JJ., concur.