ROBERT R. ZINSER *et al.*, Plaintiffs-Appellants, v. MELVIN C. ROSE *et al.*, Defendants-Appellees (State Farm Mutual Insurance Company, Defendant).

Third District   No. 3—92—0315

Opinion filed May 4, 1993.—Modified on denial of rehearing June 15, 1993.

John P. Nicoara, of Nicoara & Steagall, of Peoria (Richard L. Steagall, of counsel), for appellants.

Karen L. Kendall, Brent H. Gwillim, and Nicholas Bertschy, all of Heyl, Royster, Voelker & Allen, of Peoria (Bradley S. McMillan, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs are 13 chiropractors. Defendants are a chiropractic claims review service, Professional Evaluation Service, P.C. (PES), and its principals, Melvin Rose and Herbert Hender, and State Farm Mutual Insurance Company, a client of PES. Plaintiffs brought suit alleging sham reviews by PES of claims submitted to State Farm by plaintiffs' patients. In their second amended complaint, plaintiffs sought recovery under theories alleging interference with contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*) (Consumer Fraud Act), the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 311 *et seq.*), and the Racketeer Influenced & Corrupt Organizations Act (18 U.S.C. §1961 *et seq.* (1988)) (RICO).

On motion of defendants to dismiss all counts of the complaint, the trial court dismissed with prejudice the statutory causes of action against all defendants and denied the motion with respect to the common law intentional interference with contract claims. The court refused to enforce plaintiffs' discovery requests pending their appeal to this court. This interlocutory appeal is brought by defendants PES, Rose and Hender (hereinafter defendants) pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Neither State Farm nor the interference with contract claims are before us.

The issues on appeal are: (1) whether plaintiffs have stated a cause of action under RICO; (2) whether plaintiffs have stated a cause of action under the Consumer Fraud Act; and (3) whether plaintiffs have stated a cause of action under the Uniform Deceptive Trade Practices Act.

The standard for review of a motion to dismiss requires this court to accept as true all well-pleaded allegations of the complaint and to view these allegations in the light most favorable to the plaintiffs. Although the complaint need not exhaustively detail the basis for each claim, it must contain sufficient direct or inferential allegations of all material elements to sustain a recovery under some viable legal theory. A dismissal is not appropriate unless it is clearly apparent that the plaintiff can prove no facts in support of his claim which would entitle him to relief. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d

501, 565 N.E.2d 654; see also *Gadson v. Newman* (C.D. Ill. 1992), 807 F. Supp. 1412, 1415 (concluding that under the Federal standard "[d]ismissal is not granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' "), quoting *Conley v. Gibson* (1957), 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99.

### RICO CLAIMS

Plaintiffs' second amended complaint charges in separate counts for each plaintiff that defendants violated RICO by "continually engaging in [a] scheme to defraud *** through more than 15,000 acts of sham chiropractic claims 'review' committed since PES' formation in 1982 substantially all of which separate sham chiropractic claims 'review' conducted with regard to a particular chiropractor's particular treatment of patients are indictable offenses of mail fraud under Title 18, §1341, United States Code and wire fraud indictable under Title 18, §1343, United States Code"; that defendants Rose and Hender "have received substantial amounts of income directly from the pattern of racketeering activity engaged in sham chiropractic claims review conducted through PES, and each has acquired a substantial interest in the racketeering enterprise itself, PES, and its business of conducting sham claim review contrary to the prohibitions of 18 U.S.C. §1962(a) & (c)"; that defendants Rose and Hender and defendant PES "through its managerial agents, Rose and Hender, have each conspired together to engage in a pattern of racketeering activity through the sham chiropractic claims review scheme to defraud *** in violation of 18 U.S.C. §1962(a) & (c)"; that plaintiff "has been injured in his business by reason of the damage to his reputation and good will and his ability to receive other patients and retain the insured patients whose treatment has been the subject of a PES review within the meaning of 18 U.S.C. §1964(c)"; that plaintiff "has also been injured in his business or property as a direct and proximate result of the pattern of racketeering activity engaged by defendants through the loss of money *** in violation of 18 U.S.C. §1962(a), (c), (d)"; and that the "business of sham chiropractic claims review *** is a racketeering enterprise as defined in 18 U.S.C. §1961(4) as is the corporation PES itself."

The trial court granted defendants' motion to dismiss the RICO counts "for lack of direct injury and causation." In this appeal plaintiffs present a multipronged argument for reversal, contending that the court improperly applied a narrow interpretation of the RICO standing requirement and that their complaint on its face satisfies the causation element for purposes of the motion to dismiss. We cannot agree.

■ RICO was enacted by Congress "in an attempt to eradicate organized, long-term criminal activity." A civil cause of action may arise under RICO for persons whose business is injured by a pattern of racketeering activity, which activity may involve mail or wire fraud as proscribed by 18 U.S.C. §§1341 and 1343, respectively. Where, as here, mail and wire fraud are the predicate acts for plaintiffs' RICO claims, they must be alleged with specificity as to time and place (*Midwest Grinding Co. v. Spitz* (7th Cir. 1992), 976 F.2d 1016), and causation of plaintiffs' injury, if not direct, must flow logically from defendants' alleged activities (*National Enterprises, Inc. v. Mellon Financial Services Corp. No. 7* (5th Cir. 1988), 847 F.2d 251).

■ In our opinion, plaintiffs' RICO counts cannot withstand analysis. Although plaintiffs complain of "sham claim reviews" over a 10-year period by PES, the complaint is remarkably vague as to time and place of the use of the mail or telephone to defraud and refers only in general terms to "insurance companies" and "plaintiffs' patients" as the persons to whom such communications were directed. Such allegations are not sufficient for purposes of RICO.

Plaintiffs contend that any lack of specificity in their complaint is a product of the fact that documentation of the alleged racketeering activity is within defendants' control. However, it is apparent to us that plaintiffs' alleged inability to plead with greater specificity is not a consequence of thwarted discovery efforts, but rather is related to the indirect nature of the injury they claim to have suffered as a result of defendants' activity. The complaint alludes to damages to reputation and good will as well as lost income, but does not allege that any patients have discontinued plaintiffs' services or refused to pay their bills as a result of PES' activity. The complaint alleges only that the patients' insurers have refused to pay indemnities to their insureds. On its face, the complaint alleges only an inference of indirect injury and invites speculation of causation. Because the complaint fails to plead requisite standards of specificity and direct injury, we hold that the trial court did not err in dismissing with prejudice plaintiffs' RICO causes of action.

CONSUMER FRAUD CLAIMS

Plaintiffs next contend that the trial court erroneously gave "grudging" interpretation of the Consumer Fraud Act in granting defendants' motion to dismiss counts charging violations of the Act. Defendants contend that plaintiffs not only lack standing to bring

an action under the Act, but that in any event their allegations of fraud are insufficient to state a cognizable claim.

■■ Initially, we note that the Consumer Fraud Act was amended effective January 1, 1990. The amendment provides that "proof of public injury, a pattern, or an effect on consumers generally shall not be required." (Ill. Rev. Stat. 1991, ch. 121½, par. 270a(a).) Prior to the amendment, the courts were split on the question of whether the Act required proof of public injury or injury to consumers generally. Since the acts complained of in this case date from 1982, in order to analyze the sufficiency of plaintiffs' allegations, it must be determined whether the amendment was prospective only, as urged by defendants, or retrospective, as argued by plaintiffs. That question was recently resolved in plaintiffs' favor in *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.* (1992), 240 Ill. App. 3d 360, 368, 608 N.E.2d 178. The court there analyzed relevant case law and the legislative history of the amendment and concluded that the 1990 amendment "merely clarified rather than changed the Act" and was, therefore, applicable retroactively. The court's reasoning is sound. Accordingly, we reject defendants' challenge to plaintiffs' statutory cause of action on the ground that it fails to allege a public injury.

The standing of professionals alleging a cause of action under the Consumer Fraud Act was recently analyzed in *Gadson v. Newman* (C.D. Ill. 1992), 807 F. Supp. 1412, 1421. Plaintiff Gadson was a psychiatrist who complained that patients were being referred by defendant psychiatrist, Newman, to Newman's own clinic and admitted to defendant hospital, St. Mary's Hospital of Quincy, Illinois, in a scheme designed to profit the hospital and Newman to the exclusion of plaintiff and to increase health care costs. One of the issues before the court was whether Gadson was a person who suffered damage as a result of a violation of the Act. The court determined that he was.

"The proper test for standing was enunciated in *Downers Grove Volkswagen v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 137 Ill. Dec. 409, 546 N.E.2d 33, 41 (1989). *Wigglesworth* found that where the dispute involves two businesses who are not consumers, the test for standing is whether 'the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.' The court found that plaintiff, who was a business competitor of the defendant stated a case against defendant by alleging that the defendant published

false information about its prices to consumers. *Id.* There was no requirement that plaintiff plead any special damages other than damages to 'reputation', 'business' or 'prestige.' *Id. Wigglesworth* also noted that the requirements for standing under the act were to be liberally construed. *Id.*

The Court finds that Plaintiff Dr. Gadson's pleadings meet this test. In paragraph 25 of Count IV of this complaint, Dr. Gadson alleges harm to the medical consumers in the Quincy area because of SMH [St. Mary's Hospital] and Dr. Newman's fraudulent and deceptive practices. Dr. Gadson also notes that his own business has been damaged as a result of these actions. These pleadings satisfy the 'liberal construction' of the pleadings requirements as stated in *Wigglesworth.*" 809 F. Supp. at 1421.

█ Likewise, in the present case, we believe that liberal construction requires the conclusion that plaintiffs have standing to sue under the Act. Plaintiffs complain that defendants have harmed their reputations through collusive, sham reviews of the necessity of care and reasonableness of charges submitted on plaintiffs' clients' claims for insurance indemnities. By alleging that the insurers are thereby able to reduce their payments on the insurance claims, plaintiffs allege conduct arguably implicating consumer protection concerns. Moreover, contrary to defendants' arguments, we do not find that the damage alleged by plaintiffs is too indirect or attenuated to give them standing since, as stated in *Wigglesworth,* general damage to reputation, prestige, good will and business is sufficient under the Act. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.* (1989), 190 Ill. App. 3d 524, 534, 546 N.E.2d 33, 41.

Defendants also argue that plaintiffs' claims under the Consumer Fraud Act must fail for lack of specificity. Defendants posit that the same specificity required to state a common law fraud cause of action is needed to sustain one under the Act.

█ Notwithstanding this general rule of law, the two actions are distinct. As observed by the court in *Rubin v. Marshall Field & Co.* (1992), 232 Ill. App. 3d 522, 533, 597 N.E.2d 688, 695, quoting *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.* (1990), 197 Ill. App. 3d 948, 953, 557 N.E.2d 246, a plaintiff's right to recovery under the Act may be based on an innocent or negligent misrepresentation as well as one that is intentional. A finding for plaintiff on consumer fraud is thus not inconsistent with a finding for defendant on common law

fraud. The court explained that the Consumer Fraud Act was enacted to expand the consumer's rights beyond those of the common law and provide broader protection than the common law action of fraud. *Rubin*, 232 Ill. App. 3d at 533, 597 N.E.2d at 695, quoting *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 168, 510 N.E.2d 409.

The elements of the statutory cause of action are: (1) a deceptive act or practice; (2) defendants' intent that plaintiffs rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. "Significantly, the Act does not require actual reliance." By contrast, an actionable common law fraud claim requires pleading actual reliance. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198; *cf. Elipas Enterprises, Inc. v. Silverstein* (1993), 243 Ill. App. 3d 230 (holding that complaint brought by private party seeking money damages under the Act must plead and prove justifiable or reasonable reliance).) In *Siegel*, unlike here, plaintiffs sought recovery for both common law and statutory fraud. The court held that by adequately pleading the former, plaintiffs necessarily met their burden of pleading the latter. We reject the recent decision of *Elipas* to the extent it holds that actual reliance must be established for both causes of action.

■ In this case, we find that the lack of specificity in the mail/wire fraud counts brought under RICO does not defeat plaintiffs' complaint under the Consumer Fraud Act. Plaintiffs allege that defendants' reviews of insurance claims were in fact a sham, motivated by defendants' collusive interest with the insurer to save the insurer money that rightfully should have been paid out in indemnities to plaintiffs' chiropractic clients, and that such sham reviews in fact resulted in monetary losses to the plaintiffs along with loss of professional reputation. Taking these allegations, as we must, as true for purposes of the motion to dismiss, we do not find them so unspecific as to require dismissal. Accordingly, we hold that plaintiffs' complaints of business disparagement under the Act are sufficient to survive defendants' motion to dismiss.

### UNIFORM DECEPTIVE TRADE PRACTICES CLAIMS

Lastly, we reject defendants' challenges to plaintiffs' causes of action under the Uniform Deceptive Trade Practices Act. Defendants contend that plaintiffs lack standing, *i.e.*, the Act was not enacted for the benefit of plaintiffs because they are not purchasers of products or services from defendants. They further argue that

the complaint under this Act suffers from the same lack of specificity argued in support of the court's dismissal of the consumer fraud counts.

■■ The Uniform Deceptive Trade Practices Act, while not enacted as a consumer protection statute (*Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872), has been broadly construed as a remedy for unfair trade practices between competing businesses as well as for deceptive trade practices damaging consumers. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 35, 585 N.E.2d 51, citing *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 425 N.E.2d 1174; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.) Thus, in this case, where the alleged unfair practice was deceptive to consumers and caused harm to the provider of professional services to those consumers, the same operative facts may sustain causes of action under both statutes as against defendants' motion to dismiss based on lack of standing and specificity. See *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d at 34-35, 585 N.E.2d at 66 (rejecting defendants' arguments that plaintiffs lacked standing and that their complaint was factually insufficient for reasons given in review of dismissal of Consumer Fraud Act claim).

In sum, we hold that the trial court correctly dismissed plaintiffs' causes of action based on the RICO Act and erred in allowing defendants' motion to dismiss claims brought under the Consumer Fraud and Uniform Deceptive Trade Practices Acts. We therefore remand the cause to the circuit court of Peoria County for reinstatement of counts alleging violations of the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act and for further proceedings.

Affirmed in part; reversed in part and remanded.

SLATER and BRESLIN, JJ., concur.