**LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, in its own behalf and as subrogee to certain claimants, Plaintiff,**

v.

**DEARBORN TITLE CORPORATION, an Illinois corporation, Eileen Rasulis, an individual, First Midwest Bank, N.A., a National Banking Corporation, and Nancy Freman, an individual, Defendants.**

No. 94 C 3277.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 6, 1995.

Paul Michael Bauch, David D. Cleary, Bell, Boyd & Lloyd, Chicago, IL, Steven P. Handler, William Paul Schuman, Jonathan I. Flaum, McDermott, Will & Emery, Chicago, IL, for Lawyers Title Ins. Corp.

Craig M. White, Shanthi V. Gaur, Wildman, Harrold, Allen & Dixon, Chicago, IL, for First Midwest Bank, N.A.

William Gibbs Sullivan, William Kevin Kane, Martin, Brown & Sullivan, Ltd., Chicago, IL, for Nancy Freman.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Plaintiff, Lawyers Title Insurance Corporation ("Lawyers Title"), has filed a motion

to dismiss two of the counterclaims filed by one of the defendants, First Midwest Bank ("First Midwest") and to strike one of its affirmative defenses. For the reasons stated below, the plaintiff's motion is granted in part and denied in part.

### Background

Lawyers Title underwrites title insurance. It entered into an Agency Agreement with one of the defendants, Dearborn Title Corporation ("Dearborn"), under which Dearborn would act as Lawyers Title's agent in issuing title insurance policies in Illinois. Dearborn also conducted closings for mortgage lenders and borrowers, acting as an escrow agent. The Agency Agreement, however, excluded Dearborn's escrow and closing activities from the scope of its agency relationship with Lawyers Title. Dearborn maintained its escrow account at First Midwest.

In addition to underwriting title insurance policies, Lawyers Title also issued Closing Protection Letters to the mortgage lenders who used Dearborn's closing and escrow services. In these letters, Lawyers Title agreed to reimburse the lenders for any losses resulting from Dearborn's failure to comply with the lenders' instructions. Lawyers Title issued these letters upon the request of a lender whose borrower agreed to procure title insurance through Dearborn.

According to Lawyers Title, Dearborn fraudulently mishandled money entrusted to it as an escrow agent, creating a shortfall in the escrow account exceeding $5,000,000. Under the closing protection letters, Lawyers Title has reimbursed the lenders who lost the funds they entrusted to Dearborn. Lawyers Title now sues Dearborn and its principals to recover this money. In addition to suing Dearborn and its principals, Lawyers Title has also brought suit against First Midwest. Lawyers Title alleges that because First Midwest knew that Dearborn held the funds in its escrow account in trust for other people, First Midwest is liable for Dearborn's actions under the Illinois Fiduciary Obligations Act and the Uniform Commercial Code ("UCC"). Lawyers Title also alleges that First Midwest is liable for conversion, because it used money to be deposited into the escrow account to satisfy other obligations Dearborn had to First Midwest.

First Midwest has counterclaimed against Lawyers Title, asserting a claim for contribution and alleging violations of the Uniform Deceptive Trade Practice Act and the Illinois Title Insurance Act. Lawyers Title has filed a motion to dismiss these two counterclaims and to strike a paragraph from First Midwest's affirmative defenses alleging contributory negligence.

### Count II

In Count II,[1] First Midwest seeks contribution from Lawyers Title, alleging negligence and malfeasance by Lawyers Title. First Midwest contends that if it is held liable to Lawyers Title for damages, then Lawyers Title should itself be responsible for a portion of that liability. Because Lawyers Title has alleged only intentional torts by First Midwest, however, First Midwest may not seek contribution for its potential liability.

As the Seventh Circuit has explained, a suit "under" the Uniform Fiduciaries Act ("UFA"), codified in Illinois as the Fiduciary Obligations Act, 760 ILCS 65/1 *et seq.*, is based on a common law cause of action against a third-party who "assist[s] a fiduciary in misappropriating the principal's funds." *Appley v. West*, 832 F.2d 1021, 1030 (7th Cir.1987) (*Appley I*). The UFA provides the bank with a complete defense when it is merely negligent, permitting liability only when the bank "has actual knowledge of the fiduciary's misappropriation of the principal's funds" or "acts in bad faith." *Id.* at 1031. Because the UFA requires actual knowledge by the bank before allowing liability to attach, the common law suit against the bank necessarily alleges an intentional tort. *See* RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965) ("If the actor knows that consequences are certain, or substantially certain, to result

---

1. Count I, which seeks contribution from Dearborn and its principal, is not addressed in this motion.

from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."). *See also Maryland Casualty Co. v. Bank of Charlotte,* 340 F.2d 550, 556 (4th Cir.1965) (disallowing defense of contributory negligence by bank because "[l]iability [under the UFA] is based on defendant's conscious conduct or 'bad faith' ").

■ In Illinois, a defendant sued for an intentional tort may not assert a claim for contribution. *Appley v. West,* 929 F.2d 1176, 1180 (7th Cir.1991) (*Appley II* ) ("[U]nder Illinois law, intentional tortfeasors are not entitled to contribution.") (citing *Gerill Corp. v. Jack L. Hargrove Builders, Inc.,* 128 Ill.2d 179, 538 N.E.2d 530, 542, 131 Ill.Dec. 155, 167, *cert. denied sub nom. Jack L. Hargrove Builders, Inc. v. Rosch,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 193 (1989)). First Midwest may therefore not seek contribution for its liability to Lawyers Title on this claim.

First Midwest argues that Lawyers Title is responsible for Dearborn's fraud and is therefore not an innocent victim. First Midwest asks me to create an exception to the usual rule barring contribution for intentional torts in cases of this type. In support it cites *In re Broadview Lumber Co.,* 168 B.R. 941 (Bankr.W.D.Mo.1994). In *Broadview,* the court allowed the defendant bank sued for violating the UFA to assert a cross-claim against the people who wrongfully took the money from the trust account at the bank. In this case, First Midwest alleges only that Lawyers Title should be held responsible for Dearborn's actions as Dearborn's overseer. First Midwest does not claim that Lawyers Title actually received the funds wrongfully taken from the escrow account. *Broadview* is therefore factually distinguishable. More-

over, *Broadview* was decided under Missouri law. Illinois law makes clear that an intentional tortfeasor may not assert a claim for contribution.

■ First Midwest may similarly not pursue contribution for its liability based on Lawyers Title's conversion claim. *See Kerrigan v. American Orthodontics Corp.,* 960 F.2d 43, 45 (7th Cir.1992) ("Conversion is an intentional tort."). Lawyers Title asserts a statutory conversion claim, based on section 420 of the UCC, codified in Illinois as 810 ILCS 5/3–420. First Midwest argues that because the UCC does not mention *mens rea,* conversion under the UCC is not an intentional tort. I disagree. The common law tort of conversion is an intentional tort. The UCC codified the common law of conversion. 810 ILCS 5/3–420(a); *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 771 (3d Cir.1990). First Midwest may not seek contribution for its violation of the UCC.

■ Because contribution would not be allowed against Lawyers Title on either of the claims alleged against First Midwest, First Midwest's claim for contribution is dismissed.[2] For the same reason, paragraph 42 of First Midwest's affirmative defenses alleging contributory negligence will be stricken.[3] *See Kerrigan, supra,* 960 F.2d at 45 ("[T]he victim's contributory negligence is no defense to intentional torts.") (citing RESTATEMENT (SECOND) OF TORTS § 481 (1965)).

### Count III

In Count III, First Midwest asserts two different statutory violations. It seeks injunctive relief under the Illinois Title Insur-

---

**2.** First Midwest responds to Lawyers Title's motion to dismiss its counterclaim for contribution by arguing that Lawyers Title should be liable for contribution because it consented to First Midwest's conversion. First Midwest correctly points out that consent may be implied by silence where a reasonable person would speak if objecting. *See* KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 18 (5th Ed.1984). Consent, however, is a *defense* to a charge of conversion. It is not a basis for contribution. Although First Midwest should be given the opportunity to prove consent, it may not seek contribution on this basis.

**3.** In its response, First Midwest attempts to characterize this paragraph as relating to Lawyers Title's status as a subrogee. First Midwest argues that because Lawyers Title should itself be liable to the mortgage lenders for Dearborn's actions, Lawyers Title may not assert the lenders' claims on their behalf under the doctrine of subrogation. First Midwest may indeed be correct. It has, however, already made this defense in paragraph 39 by stating that Lawyers Title has not fulfilled the legal requirements necessary to assert subrogation rights. Paragraph 42 clearly relates to contributory negligence and therefore must be stricken.

ance Act, 215 ILCS 155/1 *et seq.*, and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

▰ Lawyers Title first argues that First Midwest does not have standing to bring this suit under either act. Although plaintiffs under the Act are typically competitors or customers of the defendant, the Act does not limit standing to those parties. *See Storck USA, L.P. v. Levy*, No. 90 C 5382, 1991 WL 60562 (N.D.Ill. April 15, 1991).

The Act does, however, limit standing to "a person likely to be damaged by a deceptive trade practice." 815 ILCS 510/3. *See Baughman v. Martindale–Hubbell, Inc.*, 129 Ill.App.3d 506, 472 N.E.2d 582, 585, 84 Ill. Dec. 622, 625 (4th Dist.1984) ("To state a cause of action for injunctive relief, a plaintiff must minimally allege that he is likely to be damaged by another's deceptive trade practice."); *Egnell, Inc. v. Weniger*, 94 Ill.App.3d 325, 418 N.E.2d 915, 918–919, 49 Ill.Dec. 895, 898–99 (1st Dist.1981) (same).[4]

In its counterclaim, First Midwest alleges only that Lawyers Title's deceptive practice caused the damages at issue in Lawyers Title's suit against it. First Midwest does not allege any *future* harm resulting from the practice.[5] Paragraph 31 of First Midwest's counterclaim states only that "[u]nless enjoined permanently from engaging in such conduct, [Lawyers Title] will continue to commit such violations." First Midwest does not claim that Lawyers Title's practice, even if prohibited by the Act, will cause injury to First Midwest. For example, First Midwest does not allege that another dishonest title agent will be able to commit fraud due to Lawyers Title's allegedly deceptive agency agreement and that he or she will keep an escrow account at First Midwest. Because First Midwest has not alleged the future harm required by the statute, its claim under the Deceptive Trade Practice Act must be dismissed.[6]

▰ Lawyers Title also argues that First Midwest lacks standing under the Illinois Title Insurance Act. 215 ILCS 155/25(b) provides:

[a]ny title insurance company or a title insurance agent who violates the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be subject to injunctive relief. If a permanent injunction is granted, the court may award actual damages. Reasonable attorney's fees and costs may be awarded to the prevailing party.

Neither the language of the statute nor the case law limits those who may seek relief.[7] First Midwest may therefore seek an injunction under this Act.

▰ To state a claim under the Title Insurance Act, First Midwest must allege that Lawyers Title has violated subsection (a) of section 21 of the Act. 215 ILCS 155/21(a) lists several types of prohibited conduct. Although First Midwest does not point to the specific provision on which it relies, paragraph (4) prohibits a title insurance company from "materially misrepresent[ing] the terms or conditions of contracts or agreements to

---

4. To combat Lawyers Title's argument that only a recipient of a closing protection letter has standing under the Act, First Midwest's mortgage affiliate has assigned any claim it might have to First Midwest. Even assuming the assignment is valid, though it was never mentioned in its counterclaim, First Midwest still does not have standing under the Act because it fails to allege a likely injury. First Midwest does not allege in its counterclaim that recipients of the closing protection letters are "likely to be damaged" by Lawyer's Title's deceptive practice.

5. Contrary to First Midwest's assertion, future liability based on Lawyers Title's complaint does not fulfill the requirements of the Act. This suit has already been filed, and enjoining Lawyers Title from a deceptive trade practice will not stop this suit from going forward.

6. *Zinser v. Rose*, 245 Ill.App.3d 881, 614 N.E.2d 1259, 185 Ill.Dec. 574 (3rd Dist.1993), cited by First Midwest, does not hold otherwise. In *Zinser*, the court addressed the sufficiency of the plaintiffs' injury and its causal link to the deceptive practice. Once the causal link to an actual harm was made, there was no question whether the harm would continue in the future if the alleged deceptive practice were not enjoined.

7. Lawyers Title cites three cases for the proposition that only parties in privity may seek relief under the Title Insurance Act. I have read these cases. None of them even mention the Title Insurance Act, let alone standing under it.

which it is a party." 215 ILCS 155/21(a)(4). First Midwest alleges that Lawyers Title's Agency Agreement with Dearborn (and perhaps other agents) was not explained to its customers. According to First Midwest, the exclusion of escrow activities from the scope of Dearborn's agency relationship with Lawyers Title deviates from standard commercial practice because a lender receiving a closing protection letter would think that the named issuing agent was an escrow agent for Lawyers Title. By failing to explain the Agency Agreement to potential customers, Lawyers Title may have "misrepresented the terms or conditions" in the closing protection letters. First Midwest has therefore alleged facts sufficient to support a claim under this provision and the claim will not be dismissed.

### Conclusion

For the reasons set forth above, First Midwest's counterclaims for contribution and for violation of the Uniform Deceptive Trade Practices Act are dismissed. Additionally, paragraph 42 of its Affirmative Defenses is stricken.