LAWYERS TITLE INSURANCE CORPO-RATION, a Virginia corporation, in its own behalf and as subrogee to certain claimants, Plaintiff,

v.

DEARBORN TITLE CORPORATION, an Illinois corporation, Eileen Rasulis, an individual, First Midwest Bank, N.A., a National Banking Corporation, and Nancy Freeman, an individual, Defendants.

No. 94 C 3277.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 11, 1998.

Steven P. Handler McDermott, Will & Emery, Chicago, IL, John E. McDonald, Jr., Vice President & Special Claims Counsel, Lawyers Title Insurance Corporation, Richmond, VA, for plaintiff.

Craig M. White, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants.

Ronald P. Kane, Gomberg Kane & Fischer, Ltd., Chicago, IL, for Garnishee defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendant, First Midwest Bank, N.A. ("First Midwest"), filed a motion for summary judgment on Counts IX and X of plaintiff's, Lawyers Title Insurance Corporation's ("Lawyers Title"), Second Verified Amended Complaint. First Midwest and Lawyers Ti-

tle also filed cross-motions for summary judgment on First Midwest's counterclaim.[1] For the reasons stated below, First Midwest's motion for summary judgment on Counts IX and X is denied, its motion for judgment on the pleadings on its counterclaim is denied, and Lawyers Title's motion for summary judgment on First Midwest's counterclaim is granted.[2]

## Background

Lawyers Title underwrites title insurance. It entered into an Agency Agreement with Dearborn Title Corporation ("Dearborn") whereby Dearborn would act as Lawyers Title's agent. The Agency Agreement excluded Dearborn's escrow activities from the scope of the agency relationship. Dearborn, however, did independently act as an escrow agent when conducting closings for mortgage lenders and borrowers. Dearborn maintained its escrow account at First Midwest.

In addition to underwriting title insurance policies, Lawyers Title also issued closing protection letters to mortgage lenders who used Dearborn's closing and escrow services. In these letters, Lawyers Title agreed to reimburse the lenders for losses resulting from Dearborn's failure to comply with the lender's instructions and from fraud. Lawyers Title issued these letters upon the request of a lender whose borrower agreed to procure title insurance through Dearborn.

According to Lawyers Title, Dearborn fraudulently mishandled money entrusted to it as an escrow agent. Lawyers Title reimbursed 166 lenders under the terms of the closing protection letters and then sued Dearborn, and others, including First Midwest. Lawyers Title argues that because First Midwest knew that Dearborn held those funds in trust for others in its escrow account, First Midwest is liable for Dearborn's actions under the Illinois Fiduciary Obligations Act ("IFOA"), 760 ILCS 65/1 et

seq., and the Illinois Uniform Commercial Code ("IUCC"), 810 ILCS 5/3–307.

First Midwest counterclaimed, seeking injunctive relief under the Illinois Title Insurance Act ("ITIA"), 215 ILCS 155/1 et seq. First Midwest contends that Lawyers Title's practice of issuing closing protection letters should be enjoined as it misleads the lenders about the scope of Dearborn's agency relationship and it promotes the provision of escrow services by companies not authorized to provide escrow services. First Midwest has not suffered any damages as a result of this practice. Its only damage stems from costs relating to the defense of this case.

## Counts IX and X

■ First Midwest moves for summary judgment on Counts IX and X on the grounds that Lawyers Title has not identified the specific checks or instruments that are the basis of its claims under the IFOA, 760 ILCS 65/9, and the IUCC, 810 ILCS 5/3–307. First Midwest contends that Lawyers Title has identified only $61,000 of suspicious checks and all of those checks pre-date the earliest closings involving the 166 lenders. Thus, First Midwest argues that Lawyers Title cannot identify any check or instrument that represents a misappropriation of any funds given to Dearborn by one of the 166 claimants.[3]

The flaw in First Midwest's argument is that it does not follow the logical consequence of the misappropriation of funds, by specific checks or instruments, prior to the deposits by the 166 claimants. If funds were misappropriated, it means that money was not in the account when it should have been; therefore, subsequent deposits into the account would need to cover the shortfalls. The claimants' deposits could have been used to cover the shortfalls from those misappropriated checks. Therefore, when it came

---

**1.** First Midwest's motion was for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**2.** First Midwest also moved to strike Lawyers Title's Rule 12(N)(3)(a) responses and Lawyers Title moved to strike all references in First Midwest's summary judgment papers to First Midwest's motions in limine. Because I did not rely on these responses/references in deciding the

summary judgment motions, I dismiss the motions to strike as moot.

**3.** Lawyers Title identifies numerous other overdraft instruments and bounced checks that it claims were not legitimately handled by First Midwest. Those checks also do not directly relate to any of the 166 claimants.

time to pay the claimants, there were insufficient funds in the account.

Nowhere in the statute does it say that the misappropriated checks or instruments have to be contemporaneous with the claimants' deposits. Dearborn has identified specific checks or instruments as required by the statutes. Whether or not Lawyers Title can link the claimants' loss to those checks is a separate question. Thus, summary judgment is denied.

### Counterclaim

■ Lawyers Title moves for summary judgment on two grounds: that First Midwest does not have a private cause of action under the ITIA and that no triable issue of material facts exists as to whether or not Lawyers Title deceived mortgage lenders about the scope of its agency relationship with Dearborn. First Midwest moves for judgment on the pleadings arguing that it does have a private cause of action and that Lawyers Title violated Section 21(a) of the ITIA by issuing the closing protection letters.

Section 25 of the ITIA provides a private cause of action for damages and for injunctive relief:

(a) Any person or persons who violate the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be liable to the person or persons charged for the settlement service involved in the violation for actual damages.

(b) Any title insurance company or a title insurance agent who violates the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be subject to injunctive relief. If a permanent injunction is granted, the court may award actual damages. Reasonable attorney's fees and costs may be awarded to the prevailing party.

215 ILCS 155/25. It allows "persons charged for the settlement service" to seek damages, but it does not specifically identify who can seek injunctive relief.[4] There is no legislative history or Illinois case law that identifies who can seek injunctive relief. Section 25(b), however, contemplates that "the court may award actual damages" if a permanent injunction is granted. This suggests that the person who seeks injunctive relief must suffer actual damages or injury from violations of Section 21(a) of the ITIA. This comports with general principles of standing under Illinois law which require some injury in fact fairly traceable to the defendant's actions. *Greer v. Illinois Hous. Dev. Auth.*, 122 Ill.2d 462, 492–93, 524 N.E.2d 561, 574–75, 120 Ill.Dec. 531, 544–45 (1988). Thus, only persons who suffer actual damages or injury because of a Section 21(a) violation can seek injunctive relief.

In this motion for summary judgment,[5] First Midwest has not presented any evidence to show that it suffered any damages or injury as a result of Lawyers Title's alleged violations of the ITIA.[6] In fact, First Midwest admits that it suffered no damages except for the costs of defending the lawsuit

---

**4.** Lawyers Title's argument that First Midwest does not have private cause of action and that the court cannot imply a cause of action is misplaced. Lawyers Title relies on cases that involve statutes where there were no provisions for a private cause of action. *See, e.g., Moore v. Lumpkin*, 258 Ill.App.3d 980, 630 N.E.2d 982, 196 Ill.Dec. 817 (1st Dist.1994) (examining statute that states that the State Department of Health and the county board of health shall investigate infectious diseases where there was no explicit cause of action for failure to investigate). In this case, the ITIA explicitly allows private actions for damages and injunctive relief under Section 25; the court does not need to imply a cause of action. The only question is what private party can bring such action under Section 25(b).

**5.** In *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F.Supp. 818, 822 (N.D.Ill.1995), I rejected Lawyers Title's argument that the parties had to be in privity to have standing under the ITIA. Since it was a motion to dismiss, I assumed the truth of all alleged facts and construed them in the light most favorable to First Midwest to find that it had standing under Section 25(b) of the ITIA to seek injunctive relief. *Id.* Now that discovery is completed, I review the issue in light of the undisputed evidence.

**6.** First Midwest claims that it can assert the rights of its mortgage affiliate who received closing protection letters. This claim was not presented in the counterclaim nor has First Midwest alleged that its mortgage affiliate suffered actual injury. Thus, this argument is too late and without merit.

against Lawyers Title. Those damages are not the result of any violation of Section 21(a) of the ITIA. Thus, First Midwest is not entitled to injunctive relief under Section 25(b) and its counterclaim is dismissed.

*Conclusion*

First Midwest's motion for summary judgment on Counts IX and X of the complaint is denied. Lawyers Title's motion for summary judgment on First Midwest's counterclaim is granted and First Midwest's cross-motion for judgment on the pleadings is denied. First Midwest's counterclaim is dismissed with prejudice